# United States Court of Appeals for the Federal Circuit

---

**OTAY MESA PROPERTY, L.P., RANCHO VISTA DEL MAR, OTAY INTERNATIONAL, LLC, OMC PROPERTY, LLC, D & D LANDHOLDINGS, LP, INTERNATIONAL INDUSTRIAL PARK, INC., (also known as Rancho De La Fuente),**
*Plaintiffs-Appellants*

**KYDDLP & RDLFGFT NO. 1, LLC.,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant-Cross Appellant*

---

2013-5122, 2014-5002

---

Appeals from the United States Court of Federal Claims in Nos. 06-CV-0167, 06-CV-0877, 06-CV-0876, 06-CV-1670 and 06-CV-1671, Judge Thomas C. Wheeler.

---

Decided: March 6, 2015

---

ROGER J. MARZULLA, Marzulla Law LLC, Washington, DC, argued for plaintiffs-appellants. Also represented by NANCIE GAIL MARZULLA.

JOHN EMAD ARBAB, Environment and Natural Resources Division, United States Department of Justice, Washington, DC argued for defendant-cross-appellant. Also represented by SAM HIRSCH.

---

Before TARANTO, SCHALL, and CHEN, *Circuit Judges*.

SCHALL, *Circuit Judge*.

## DECISION

This is the second time this case has been before us. In *Otay Mesa Property, L.P. v. United States*, 670 F.3d 1358 (Fed. Cir. 2012) ("*Otay Mesa I*"), we held that the United States was liable to plaintiffs Otay Mesa Property, L.P., Rancho Vista Del Mar, Otay International, LLC, OMC Property, LLC, D & D Landholdings, LP, and International Industrial Park, Inc. (collectively, "Otay Mesa") for the taking of property owned by them.[1] Specifically, we ruled that the U.S. Border Patrol's placement of motion sensors on five separate parcels of land owned by Otay Mesa adjacent to the Mexican border in Southern California constituted the taking of permanent easements over the parcels. *Id.* at 1365. We remanded the case to the United States Court of Federal Claims for a determination of the damages to which Otay Mesa was entitled as a result of the taking. *Id.* at 1369–70.

On remand, the Court of Federal Claims held (1) that Otay Mesa was entitled to no damages for the taking of an easement over land that could be developed for industrial use ("the development property"); (2) that it was

---

[1]   In relevant part, the Fifth Amendment requires that the United States pay "just compensation" whenever it takes private property for public use. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation.").

entitled to damages in the amount of $455,520 for the taking of an easement over land that could be used for environmental mitigation purposes ("the mitigation property"); and (3) that interest on the $455,520 damages award should run from August 28, 2008, the date the court found Otay Mesa became aware of the taking as a result of the filing of a stipulation of liability by the government. *Otay Mesa Prop., L.P. v. United States*, 110 Fed. Cl. 732, 743–47 (2013) ("*Otay Mesa II*") (interest on the damages award was initially deemed to run from October 16, 2008, but the date was adjusted following a motion for reconsideration, 111 Fed. Cl. 422, 424 (2013) ("*Reconsideration Decision*")).

Otay Mesa appeals the decision of the Court of Federal Claims denying damages for the taking of an easement over the development property. It also appeals the decision of the court to compute interest on the $455,520 damages award from August 28, 2008, rather than from the dates sensors were first installed on the parcels containing the mitigation property, as stated in the government's stipulation of liability. For its part, the government cross-appeals the damages award for the taking of an easement over the mitigation property.

For the reasons set forth below, we affirm the decision of the Court of Federal Claims denying damages for the taking of an easement over the development property. We also affirm the decision of the court awarding Otay Mesa $455,520 in damages for the taking of an easement over the mitigation property. However, we vacate the decision of the court computing interest on the $455,520 damages award from August 28, 2008. As we explain, Otay Mesa is entitled to interest computed from when sensors were first placed on its property. The dates the Border Patrol first placed sensors on Otay Mesa's property are set forth in the government's stipulation of liability. We thus affirm-in-part, vacate-in-part, and remand. On remand, the Court of Federal Claims will determine the

amount of interest to which Otay Mesa is entitled on the $455,520 damages award.

BACKGROUND

The facts of the case are set forth in *Otay Mesa I* and in the several decisions of the Court of Federal Claims. We recite here the facts pertinent to the issues now before us.

I.

Otay Mesa owns eleven contiguous parcels of largely undeveloped land adjacent to the Mexican border in the Otay Mesa area of San Diego County. *Otay Mesa I*, 670 F.3d at 1360. Five of those parcels, Nos. 1, 3, 4, 5, and 10, are at issue in this case. Beginning in April 1999 and continuing through November 2005, the Border Patrol placed a total of fourteen motion sensors on those parcels in order to detect illegal immigrants entering the United States from Mexico. The motion sensors are approximately one cubic foot in size and are buried underground, except for a one foot antenna that remains above the surface of the soil. Joint Appendix ("J.A.") 1792 at ¶ 3; *see also Otay Mesa II*, 110 Fed. Cl. at 734.

In 2006, Otay Mesa filed suit in the Court of Federal Claims alleging, *inter alia*, that the installation of the sensors constituted a taking of Otay Mesa's property, entitling it to "just compensation" under the Fifth Amendment's Takings Clause. *Otay Mesa Prop., L.P. v. United States*, 86 Fed. Cl. 774, 775 (2009) ("*Liability Decision*").[2] On August 28, 2008, prior to the trial on liability, the government filed a document in which it

---

[2]    From our review of the record, it appears that plaintiff KYDDLP & RDLFGFT No. 1, LLC., is not named as an appellant here because the parcel it owns, or at one time owned, No. 9, is not at issue on appeal.

stipulated that "by virtue of its placement of the 14 sensors on the five parcels of land, it had taken a property interest in the nature of an easement over the parcel of land on which the sensors have been placed." J.A. 1793 at ¶ 6; *see also Liability Decision*, 86 Fed. Cl. at 777, 790–91. The document stated that the Border Patrol had installed sensors during the period beginning April 1999 and ending November 2005. The document described the easement, in relevant part, as:

> A perpetual and assignable easement to locate, construct, operate, maintain and repair or replace the specified underground seismic intrusion sensors on the specified parcels, including the right to ingress and egress to each sensor location. The easement shall be deemed to have commenced on the date the sensor is listed as having been installed, and will continue until the sensor is no longer needed or the property is developed. Each sensor is and shall be located so as not to affect the functionality of the property. Should the landowner desire to develop any portion of the subject parcel, the sensor will be removed or redeployed upon 30 days written notice that a grading permit has been issued by the County of San Diego permitting development of all or a portion of the property. Upon removal of a sensor, the portion of the easement relating to that sensor shall terminate.

J.A. 1794 at ¶ 7; *see also Otay Mesa I*, 670 F.3d at 1361–62.

Based on the government's stipulation, the Court of Federal Claims held that the government was liable for the physical taking of a temporary easement over the five parcels for the purpose of installing and operating the sensors. The court reserved the determination of damages for subsequent proceedings. *Otay Mesa I*, 670 F.3d at

1362. Following a trial on damages, the court determined that Otay Mesa was entitled to compensation in the amount of $3,043,051, plus interest for the taking of the easement. *Id.*

## II.

The government appealed the decision of the Court of Federal Claims. According to the government, the trial court incorrectly ruled that the taking of the easement was temporary rather than permanent. That ruling, the government contended, led the court to use the fair market rental value method of determining compensation, rather than the before-and-after method, which resulted in an erroneous calculation of Otay Mesa's damages.[3] The government argued that, under the before-and-after method, Otay Mesa was entitled to only a nominal award, in view of the court's finding that the use of the sensors had not resulted in any restriction on the functionality of the property. *Id.* at 1363. For its part, Otay Mesa cross-appealed the Court of Federal Claims' decision to limit the scope of the taking to five parcels of land (Nos. 1, 3, 4, 5, and 10) and the time period (April 1999 through November 2005) identified in the government's stipulation. *Id.*

In *Otay Mesa I*, we held that the Border Patrol's blanket easement to install, maintain, and service sensors on Otay Mesa's property constituted a permanent physical taking. *Id.* at 1365. We thus remanded the case to the

---

[3]   As we noted in *Otay Mesa I*, the usual measure of compensation for a temporary taking is the fair rental value of the property for the period of the taking, whereas, for a permanent taking, the owner is typically entitled to the diminution in the fair market value of the property. 670 F.3d at 1364. The latter measure of compensation is sometimes referred to as the "before-and-after" method.

Court of Federal Claims for a redetermination of damages. We stated that, "[o]n remand, the court should determine damages based upon the Border Patrol having taken a permanent blanket easement over Otay Mesa's property, as set forth in the stipulation." *Id.* at 1368. We agreed with the government that the Court of Federal Claims erred in ruling that the Border Patrol had temporarily taken Otay Mesa's property. We did not, however, endorse the government's view that Otay Mesa's damages should be determined based upon a before-and-after methodology. *Id.* at 1369. Rather, we stated:

> As noted, the government has argued before us that Otay Mesa's damages should be determined based upon a before-and-after methodology. While diminution in value is a useful methodology in many cases, we reiterate that the focus of the damages analysis must always remain on awarding just compensation for what has been taken. To award just compensation, a court must sometimes deviate from the traditional permanent taking-diminution in value and temporary taking-rental value approaches.

*Id.*

We thus instructed that, on remand, the Court of Federal Claims "will have discretion in identifying a methodology that fulfills the goal of awarding Otay Mesa just compensation." *Id.* We emphasized that what was important was for the focus to be on awarding just compensation for exactly what had been taken in the case. We identified what had been taken as "a minimally invasive permanent easement to use undeveloped land that is unilaterally terminable by Otay Mesa." *Id.* at 1368.

Turning to Otay Mesa's cross-appeal, we concluded that the Court of Federal Claims had not clearly erred when it limited the scope of the taking to the parcels of

land and the period of time identified in the government's stipulation. *Id.* at 1370. Accordingly, we affirmed-in-part and vacated-in-part the decision of the Court of Federal Claims. We remanded the case to the court for further proceedings consistent with our opinion. *Id.*

## III.

On remand, the Court of Federal Claims approached the damages issue by considering the two types of land that make up parcels 1, 3, 4, 5, and 10. The court determined, and the parties generally agree, that of the 897 acres of land at issue, approximately 278 acres are suitable for development (the development property), while approximately 619 acres are suitable for environmental mitigation purposes (the mitigation property).[4] *Otay Mesa II*, 110 Fed Cl. at 734, 738, 740. The court held that Otay Mesa was entitled to no damages for the taking of an easement over the development property. Based upon the evidence before it, the court determined that the sensor easement "would have no material effect" on the development property because Otay Mesa could have any sensors removed upon thirty days written notice that the

---

[4]    In valuing real property, a primary consideration is its "highest and best use"—i.e., its most profitable use. Some of Otay Mesa's property's highest and best use is as mitigation land, which is land that qualifies under federal and state regulations for use by developers to offset development of other environmentally sensitive land. *Otay Mesa II*, 110 Fed. Cl. at 735–36. Because developers may find it difficult to locate appropriate mitigation land, landowners can profit from selling certain land that compensates for adverse effects on protected species and habitats. *Id.* at 736. The balance of Otay Mesa's property has a highest and best use as land suitable for standard industrial development. *Id.* at 738.

property had been approved for development. *Id.* at 734, 744.

The Court of Federal Claims determined, however, that Otay Mesa was entitled to $455,520 in damages for the taking of an easement over the mitigation property. This figure represented five percent of the $9,110,400 fair market value appraisal for the mitigation property. *Id.* at 747. Faced, on the one hand, with Otay Mesa's argument that the placement of the sensors on the mitigation property had reduced the value of the property by forty percent, and on the other, by the government's contention that the sensor placement had not had any effect on the value of the property, the court stated:

> Despite the Court's conclusion that the conflicting evidence tilts in Defendant's favor, the Court is not convinced that a landowner would willingly convey an interest in land to the Government for absolutely no compensation whatsoever, nor that the encumbrance has absolutely no effect on the value of the subject property. . . . Here, Plaintiffs undeniably face a risk that their environmentally sensitive property will not be approved for mitigation use. The Court does not assess this risk to be anywhere near the 40 percent level advocated by [Otay Mesa's expert], but the risk is significant enough that the Court cannot accept the Government's position of a zero impact either. For Plaintiffs to assume this risk without any compensation for the admitted Fifth Amendment taking would leave Plaintiffs in a worse position than before the taking occurred. . . . [I]t is plausible that the Government's sensor easement might prevent the use of Plaintiffs' property for mitigation purposes. Even if this outcome never occurs, Plaintiffs' assumption of the risk should be ascribed some value.

*Id.* at 746–47.

In its decision, the Court of Federal Claims awarded Otay Mesa interest from October 16, 2008, "the date," the court stated, "on which [Otay Mesa] became aware of the taking through the Government's filing of the stipulation." *Id.* at 747. Otay Mesa moved for reconsideration on the issue of interest. It argued that interest should run from April 1999, when the first sensor was installed on its property, not from the date when the government filed its stipulation of liability in 2008, which, in any event, was August 28, 2008, not October 16, 2008. The court granted the motion for the limited purpose of setting August 28, 2008, as the starting date for the computation of interest. *Reconsideration Decision*, 111 Fed. Cl. at 424. In all other respects it denied it. The court acknowledged "the existence of ample case law holding that interest in a Fifth Amendment taking should run from the date of the taking." *Id.* at 423. It determined, though, that that proposition did not apply in this case. The court pointed out that, in arriving at its $455,520 damages award, it had ascribed a value (five percent) to the risk Otay Mesa assumed in having its property subjected to the government's easement. Pointing to August 28, 2008, the court stated that, before that date, "only the Government knew that the sensors were in use on Otay Mesa's property." *Id.* at 424. The court reasoned, "[i]f no person or entity outside of the Government was aware of the sensors until the disclosure date in 2008, the risk on which the Court's damages award is based did not exist until 2008." *Id.*

On July 22, 2013, the Court of Federal Claims entered judgment awarding Otay Mesa damages in the amount of $455,520, with interest computed on that amount from August 28, 2008. Otay Mesa's current appeal and the government's cross-appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

Discussion

Following a damages trial, we review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error. *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005); *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1378 (Fed. Cir. 2007) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

As noted above, Otay Mesa appeals the denial of damages for the taking of an easement over the development property. The government cross-appeals the award of damages for the taking of an easement over the mitigation property. And Otay Mesa appeals the court's decision not to award interest from the date sensors were first installed on the parcels containing mitigation property.[5] We first address Otay Mesa's appeal with respect to the development property.

I.

A.

The Court of Federal Claims found that the "Border Patrol's sensor easement would have no material effect on

---

[5]    In its motion for reconsideration, Otay Mesa requested that interest run from the date the first sensor was installed, in April 1999. *Reconsideration Decision*, 111 Fed. Cl. at 424. On appeal, Otay Mesa argues that interest should run from the date a sensor was first installed on each respective parcel containing mitigation property.

the developable land" and denied damages for the government's easement over that portion of Otay Mesa's property. *Otay Mesa II*, 110 F.3d at 734. While Otay Mesa's expert witness testified that the easement caused a ten percent diminution in the value of the development property, the court found much of that evidence to be "minimally persuasive," and instead credited the government's evidence to the contrary. After weighing the competing evidence, the court ultimately held that Otay Mesa "failed to prove actual damages with respect to a diminution in value of developable land." *Id.*

On appeal, Otay Mesa contends that it met its burden of showing a fair and reasonable approximation of damages as to the development property. *See Ark. Game & Fish Comm'n v. United States*, 736 F.3d 1364, 1379 (Fed. Cir. 2013); *Precision Pine & Timber Inc. v. United States*, 596 F.3d 817, 833 (Fed. Cir. 2010). It argues that all that was required to prove its damages case was "reasonable certainty," not absolute precision. Otay Mesa states that, in addition to its diminution in value theory, it presented evidence showing that other parties, such as utility companies and the Border Patrol itself, paid relatively large sums for easements over the development property in question and other nearby land owned by Otay Mesa. It points to testimony suggesting that the very existence of the easement could negatively affect the ability to receive project approvals. Otay Mesa argues that the court ignored much of this evidence and, thus, its decision to deny damages was clearly erroneous. It contends that the court's holding amounts to a conclusion that Otay Mesa would have conveyed the easement to the government for no consideration at all.

In response, the government contends that Otay Mesa's evidence was not ignored, but, rather, was considered and found to be insufficient, or was not probative of damages. The government points out that the Court of Federal Claims discounted Otay Mesa's expert witness's

valuation as being premised on faulty assumptions. The government also states that evidence relating to prior easements over Otay Mesa's property was not presented during the remand trial and that, in any event, those easements were not probative of damages because they were not examples of the "minimally invasive" or "unilaterally terminable" easements at issue here. Unlike the prior easements, the government points out, the sensor easements require the Border Patrol to remove or redeploy the sensors upon thirty days written notice. The government reasons that, because Otay Mesa failed to provide reliable expert witness evidence or to produce any comparable easement sales, the court's decision to credit the government's valuation and to deny damages was not clearly erroneous.

## B.

We conclude that the Court of Federal Claims' decision to deny damages for the easement over 278 acres of development property was not clear error. As an initial matter, the fact that a taking occurred does not itself establish what compensation should be awarded. What is critical in the determination of just compensation is not the gain to the government from the taking, but the actual loss to the landowner. *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 281 (1943) (noting the "well settled rule" that it is "the owner's loss, not the taker's gain, which is the measure of compensation for the property taken"); *United States v. Chandler-Dunbar Water Power Co.*, 229 U.S. 53, 80–81 (1913) ("[I]n a condemnation proceeding, the value of the property to the government for its particular use is not a criterion."). Once a taking has been established, it is the landowner who bears the burden of proving an actual loss has occurred. *Bd. of Cnty. Supervisors of Prince William Cnty., Va. v. United States*, 276 F.3d 1359, 1364 (Fed. Cir. 2002). To carry its burden, the landowner must show actual damages "with reasonable certainly," which "requires

more than a guess, but less than absolute exactness." *Precision Pine*, 596 F.3d at 833.

During the trial on remand, Otay Mesa presented just one expert, Randy Tagg. Mr. Tagg, who is an appraiser, testified as to the damages resulting from the taking of an easement over the development property. Mr. Tagg's assertion that there was a ten percent diminution in the value of the development property was based on the prior testimony of a witness from the 2009 trial and on the results of a telephonic market survey. *Otay Mesa II*, 110 F.3d at 743. In weighting the credibility of Mr. Tagg's damages assessment, the Court of Federal Claims found that the prior testimony contained "pervasive generalities" and was based on the "mistaken assumption" that the easement does not limit the number of sensors. *Id.* The court also found that Mr. Tagg's telephonic market survey of land developers was "casual, undocumented, and narrow," consisting of only seven telephone calls and four responses. *Id.* at 744. Two of the responsive participants, the court noted, refused to provide any estimate of diminution of value, while the other two responses were "minimally persuasive," as they were also premised on the erroneous assumption that the easement does not limit the number of sensors allowed on the property. *Id.* Mr. Tagg, the court stated, "exchanged no written correspondence with these developers, and his work files [did] not contain any notes of his conversations with them." *Id.* at 739. It was the judgment of the court that, considering foundational flaws of Mr. Tagg's valuation, a "ten percent reduction in value [was] dubious." *Id.* at 744.

On the other hand, the Court of Federal Claims found the testimony of the government's expert witness—who testified that the easement would have no impact on the development property—to be "much more instructive." *Id.* The government's expert, Stephen Roach, an appraiser in San Diego, based his valuation on the wording of the easement itself. First, Mr. Roach concluded that the

easement was limited to no more than fourteen sensors. *Id.* at 740. Second, he found that the language stating that, "should the landowner desire to develop any portion . . . , the sensor will be removed or redeployed upon 30 days written notice that a grading permit has been issued by the County of San Diego" meant there could be no measurable effect on the suitability of the development property for future development. *Id.* That conclusion was buttressed by the prior testimony of Richard Shick, one of the government's experts from the 2009 trial. Mr. Shick, who is project manager for the County of San Diego Department of Public Works, was designated as the most knowledgeable in his department on the impact of easements on the process of receiving grading permits for the development of land. *Id.* His work responsibilities included issuing grading permits for development of land within the central and southern regions of San Diego County, where Otay Mesa's property lies. J.A. 889. His opinion in 2009 was that the easement would likely not prevent his department from issuing a grading permit, but might result in an "advisory note" on the development plans advising the applicant to notify the United States within thirty days of issuance. *Otay Mesa II*, 110 F.3d at 737.

We agree with the Court of Federal Claims that the government's position on the development property is much more persuasive than that of Otay Mesa. Otay Mesa presents no persuasive argument why, in view of the language of the stipulation, it was clear error for the court to credit the government's zero-damage valuation over its own clearly flawed ten-percent-diminution valuation. The Court of Federal Claims properly exercised its judgment in its role as the trier of fact by weighting the credibility of the respective witnesses and their before-and-after valuations of the land.

Otay Mesa's contention that the Court of Federal Claims ignored relevant evidence stems from its belief

that the trial court was *required* to construct a damages valuation from evidence presented during the 2009 trial, despite such evidence never being formally presented during the remand trial. Although we believe the trial court was properly within its discretion in denying damages based on the evidence presented during the trial on remand, we nevertheless address Otay Mesa's argument.

Specifically, although Otay Mesa concedes that it was unable to find any "comparable" easements sales, it urges that the Court of Federal Claims should have used prior, tangentially-related easement sales to create its own valuation of the property. The prior easements identified by Otay Mesa are easements that it sold for underground pipelines for sewer, water, gas, and electricity; they also are easements for roads and overhead power lines. While those sales may show that substantial value has been paid for easements over the subject land, we are unpersuaded that the mere existence of easements that are neither "minimally invasive" nor "unilaterally terminable" provides a basis for determining that the Court of Federal Claims committed clear error in accepting the government's zero-damages valuation. Unassisted by expert reports or trial testimony on how those utility and road easements relate to the permanent sensor easements at issue here, the court was left to speculate as to how those easements would factor into a supposedly proper "just compensation" calculation. The court was not obligated to construct a damages award for Otay Mesa when it had substantial, credible evidence before it indicating that no actual loss was suffered. *Vaizburd v. United States*, 384 F.3d 1278, 1284–85 (Fed. Cir. 2004) (rejecting the "proposition that a court may not adopt one party's credible appraisal over the other party's less credible appraisal" and holding that the taking "did not diminish the market value of the [landowner's] property").

In *Precision Point*, we concluded that a trial court is not *necessarily* stuck with the "stark choice" of accepting

or rejecting a party's valuation, but it did not foreclose that option. 596 F.3d at 832. "As the fact finder in the bench trial, the judge is responsible for deciding what evidence to credit or reject and what result to reach," which is precisely what the trial judge did here. *Id.* at 833. As we explained in *Precision Point*, while we may know more on an appeal from a bench trial than from a jury trial as a result of a written opinion, it "does not alter th[e] judge's discretion to weigh evidence or our standard of review." *Id.* Similarly, in *Yaist v. United States*, the court noted that, where comparable sales data is lacking, it is *permissible* to fashion a damages award from "other evidence," so long as it is "premised on a reasonably informed basis." 17 Cl. Ct. 246, 257 (1989). Contrary to Otay Mesa's contentions, it is doubtful whether the prior easement sales, without more, could have provided a "reasonably informed basis" to value a unique sensor easement that is minimally invasive, unilaterally terminable, and must also not affect the functionality of the land for development purposes.

Finally, Otay Mesa calls it a "paradox" and "irreconcilable" that, as a temporary easement, the encumbrance had substantial value, yet as a permanent easement it was denied damages. But as we explained in *Otay Mesa I*, the prior valuation was based exclusively on the rental value of the property for skydiving and parachute training. 670 F.3d at 1368. That rental market methodology was erroneous. *Id.* Indeed, we explicitly instructed the Court of Federal Claims on remand not to "overlook exactly what has been taken by the Border Patrol—a minimally invasive permanent easement to use undeveloped land that is unilaterally terminable by Otay Mesa." *Id.* We reminded the court that, "should Otay Mesa wish to develop any portion of the property, any affected sensor will be removed or redeployed upon 30 days written notice" of a grading permit issuance. *Id.* at 1369. And, we gave the court great leeway "to fashion an appropriate

measure of compensation." *Id.* In our view, considering the whole record before the court, it was not clear error to accept the government's position and to deny damages for the development property.

## II.

### A.

Following the damages trial on remand, the Court of Federal Claims rejected the government's zero-percent diminution valuation of the mitigation property, as well as Otay Mesa's forty-percent-diminution valuation. *Otay Mesa II*, 110 Fed. Cl. at 746. The court then exercised its discretion in formulating a damages award that it believed accounted for the real, but minimal, risk that the property would be rejected for mitigation use due to the sensor easement over it. *Id.* at 747. It awarded $455,520 for the taking of a permanent easement over Otay Mesa's mitigation property—an award of five percent of the property's $9,110,400 fair market value. *Id.*

The government now cross-appeals that award. It argues that the damages award is based on clearly erroneous factual findings and that it is inconsistent with other conclusions in the Court of Federal Claims' damages decision. Specifically, the government contends that the court found that the easement would *not* affect the biological resources of the mitigation land. *See id.* at 745. In addition, it notes that the court found that, even after the sensors were placed on its property, Otay Mesa used portions of the property for mitigation purposes. *Reconsideration Decision*, 111 Fed. Cl. at 424. It further points out that evidence was presented during the 2009 trial indicating that the sensors would have no measurable impact on the use of Otay Mesa's land for mitigation purposes. *Otay Mesa II*, 110 Fed. Cl. at 737. The government, in other words, argues that there is no credible evidence from which the Court of Federal Claims could

conclude that there was a five percent risk that the property would not be approved for mitigation use.

Otay Mesa responds that, even though the Court of Federal Claims arrived at a damages award that neither party suggested, it was well within its broad discretion to do so. It argues that the court had ample evidence from which it could conclude that Otay Mesa's land might not be approved for mitigation use. It contends that its appraiser, Mr. Tagg, as well as its other witnesses, testified that there would be a diminution in the value of land as mitigation property as a result of an easement that provides for installation of sensors, as well as for ingress and egress to and from the sensors. It points, for example, to its expert on mitigation, James Carter, who testified that ingress and egress to the sensors, in addition to the redeployment and relocation of the sensors, would negatively impact the ability to find a management company that would take title to the land. J.A. 681–82. It explains that the Court of Federal Claims did not *sua sponte* fashion an arbitrary "risk" award, as it is characterized by the government, but that the court laid out factual bases for awarding a five percent diminution in value due to the identified risk.

## B.

We conclude that the Court of Federal Claims properly exercised its discretion in shaping an award that accounted for the potential that the mitigation property might not be approved for mitigation use. As noted above, we explicitly instructed that "on remand the Court of Federal Claims will have discretion in identifying a methodology that fulfills the goal of awarding Otay Mesa just compensation." *Otay Mesa I*, 670 F.3d at 1369. During the damages trial on remand, the court was confronted with conflicting evidence and relatively extreme valuations for the mitigation property—proposals of zero percent or forty percent diminution in value.

Recognizing that the "Plaintiffs undeniably face a risk that their environmentally sensitive property will not be approved for mitigation use," but that the risk was not "anywhere near the 40 percent [diminution in value] level advocated by Mr. Tagg," the court chose its own valuation that captured what it perceived as the risk of a "potential denial of a mitigation request." *Otay Mesa II*, 110 Fed. Cl. at 734, 746. It explained that, "[e]ven if this outcome never occurs, Plaintiffs' assumption of the risk should be ascribed some value." *Id.* at 746. It found that Otay Mesa would not have willingly assumed that risk for its mitigation property without some, albeit minimal, consideration. *Id.*

We detect nothing inappropriate with the Court of Federal Claims looking at the evidence as a whole and using its own methodology to calculate a damages award. Contrary to the government's assertion, the court's decision to ascribe its own valuation to the damages associated with the mitigation land is consistent with both our instruction on remand and our case law. In *Precision Pine*, discussed above, we made clear that a trial court need not accept either party's damages position. 596 F.3d at 832–33. We explained that it is both correct and important for a trial court to use its flexibility to tailor a fair and reasonable result based on the evidence it credits or rejects. *Id.*; *see also Seravalli v. United States*, 845 F.2d 1571, 1575 (Fed. Cir. 1988) ("[Trial] courts necessarily must have considerable discretion to select the method of valuation that is most appropriate in the light of the facts of the particular case."). Here, where the parties took divergent and extreme positions, and the court believed that the landowner was in a worse position after the taking, the court had few options in determining a just

compensation award other than creating its own valuation.[6]

Moreover, the government overlooks that many of the arguments it advances for why it was not clear error for the Court of Federal Claims to deny damages for the easement over the development property likewise apply to the court's decision to award damages for the easement over the mitigation property. When a trial court provides a damages award that is within the range of credible testimony, it is not an appellate court's role to reweigh the evidence or second-guess the finder of fact. *E.g.*, *Rapid Transit Co. v. United States*, 295 F.2d 465, 467 (10th Cir. 1961) (finding that "[s]ince the award was well within the range of credible testimony this court may not reweigh the evidence or retry the facts"), *cert. denied*, 369 U.S. 819. The Court of Federal Claims' five-percent award for the mitigation property—like its denial of damages for the development property—is reasonable on the evidence.

## III.

### A.

Last, we address Otay Mesa's appeal with respect to the date from which interest on its damages award should be calculated. Following the trial on remand, the Court of Federal Claims awarded compound interest from October 16, 2008, the date on which it believed Otay Mesa first became aware of the taking through the government's stipulation. *Otay Mesa II*, 110 Fed. Cl. at 747. On reconsideration, the trial court "acknowledge[d] the existence of

---

[6] To the extent the government contends that the court's methodology is inconsistent with the methodology used in the original damages decision, that decision was based on the notion that the taking was temporary in nature. As discussed above, that methodology was incorrect and was based on a rental value calculation.

ample case law holding that interest in a Fifth Amendment taking should run from the date of the taking," but declined to adjust the date beyond granting a change from October to August 2008, when the government's stipulation was first filed. *Reconsideration Decision*, 111 Fed. Cl. at 423. The court believed that "[i]f no person or entity outside of the Government was aware of the sensors until the disclosure date in 2008, the risk on which the Court's damages award is based did not exist until 2008." *Id.*

On appeal, Otay Mesa argues that the case law is unequivocal that interest must be calculated from the date of the taking. And it argues that the date of the taking cannot be disputed, as the government expressly listed the dates that each sensor was first installed on the subject property in its 2008 stipulation. In response, the government defends the Court of Federal Claims' decision. It does so, not by arguing that the case law allows for interest to be computed from some other point in time other than the date of the taking, but, rather, by contending that, since no damage occurred before 2008, the court essentially applied an interest rate on zero damages from the date of the taking until the date of the government's stipulation. It argues that before the stipulation Otay Mesa did not know about the sensors and therefore could not have suffered any damages on which interest could be compounded. Awarding Otay Mesa interest from a date prior to the 2008 stipulation, the government contends, would place it in a better position than if the taking had never occurred.

## B.

We hold, as a matter of law, that interest on Otay Mesa's damages award must be calculated from the date sensors first encumbered Otay Mesa's property. The Supreme Court has long held that "just compensation" includes interest compounded from the date of a taking when payment for the taking does not coincide with the

taking itself. *Phelps v. United States*, 274 U.S. 341, 344 (1927); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306 (1923). In *Phelps*, the Court recognized that the "Plaintiffs' property was taken before its value was ascertained or paid." 274 U.S. at 344. It explained that the "[j]udgment in 1926 for the value of the use of the property in 1918 and 1919, without more, [was] not sufficient to constitute just compensation." *Id.* The Court instructed that the landowner was "entitled to have the full equivalent of the value of such use at the time of the taking paid contemporaneously with the taking." *Id.*

Thus, "if disbursement of the award is delayed, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (citing *Phelps*, 274 U.S. at 344 and *Seaboard*, 261 U.S. at 306). In order for an owner to be placed in "as good a position pecuniarily," interest must be added to the damages award in order to compensate for the time value of money and the potential opportunity the owner has lost to earn income on its damages award as a result of the taking. It is now axiomatic that "the Fifth Amendment's reference to 'just compensation' entitles the property owner to receive interest from the date of the taking to the date of payment as a part of his just compensation." *United States v. Thayer-W. Point Hotel Co.*, 329 U.S. 585, 588 (1947); *see also Jacobs v. United States*, 290 U.S. 13, 17 (1933) ("[J]ust compensation is comprehensive, and includes all elements, 'and no specific command to include interest is necessary when interest is part of such compensation.'").

Here, as in *Kirby Forest*, the government stipulated to the precise date of its taking. It conceded in its 2008 stipulation that "by virtue of its placement of the 14 sensors specified above on the listed parcels of land, *it has taken a property interest in the nature of an easement*."

J.A. 1793 at ¶ 6 (emphasis added).  It stipulated that the "easement shall be deemed to have commenced on the date the sensor is listed as having been installed."  J.A. 1794 at ¶ 7.  The stipulation also enumerates the dates that each sensor was first installed: dates ranging from April 1999 to November 2005.  J.A. 1793 at ¶ 5.  Because the government's payment of consideration for its taking was not paid contemporaneously with the taking, Otay Mesa is now entitled to interest "sufficient to ensure that [it] is placed in as good a position pecuniarily as [it] would have occupied if the payment had coincided with the appropriation."  *Kirby Forest*, 467 U.S. at 10.

We are not persuaded by the Court of Federal Claims' and the government's justifications for why interest should not begin to run until the date of the government's stipulation.  To begin with, delaying the running of interest until Otay Mesa supposedly first knew about the taking would be contrary to the established precedent just discussed.  Moreover, if the government's easement created a risk that Otay Mesa's mitigation land might be denied approval for mitigation use as of 2008, then the sensor easement would have also created the same risk when the land was first encumbered.  Otay Mesa's knowledge of the easement is irrelevant to whether the easement objectively created that risk.  Finally, if interest is not computed from the date of the taking, but instead from the date a landowner is first made aware of the taking, the government is presented with an incentive to delay disclosure of physical invasion for as long as possible.  We see no logic in creating such an incentive.

Accordingly, we vacate the decision of the Court of Federal Claims to award interest from August 28, 2008, and remand for recalculation of the interest owed to Otay Mesa.  As noted, Otay Mesa argues before us that interest should be calculated based on the different dates that the respective parcels constituting the mitigation property were first encumbered by a sensor easement.  The gov-

ernment has not proposed a method for calculating interest in the event that we rule against it. On remand, after receiving the views of the parties, the Court of Federal Claims will be in a position to formulate a methodology for calculating interest.

## CONCLUSION

For the foregoing reasons, we affirm-in-part and vacate-in-part the decision of the Court of Federal Claims. The case is remanded to the court for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, and REMANDED**

## COSTS

Each party shall bear its own costs.