NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TAYLOR & SONS, INC., CEDRIC THEEL, INC., WHITEY'S, INC., RFJS COMPANY, LLC, JIM MARSH AMERICAN CORPORATION, LIVONIA CHRYSLER JEEP, INC., BARRY DODGE INC.,**
*Plaintiffs-Appellants*

**ALLEY'S OF KINGSPORT, INC., ET AL.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MIKE FINNIN MOTORS, INC., GUETTERMAN MOTORS, INC.,**
*Plaintiffs-Appellants*

**ALLEY'S OF KINGSPORT, INC., ET AL.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1185, 2020-1205

————————————

Appeals from the United States Court of Federal Claims in Nos. 1:10-cv-00647-NBF, 1:11-cv-00100-NBF, 1:12-cv-00900-NBF, Senior Judge Nancy B. Firestone.

————————————

Decided: December 29, 2020

————————————

ROGER J. MARZULLA, Marzulla Law, LLC, Washington, DC, argued for plaintiffs-appellants Taylor & Sons, Inc., Cedric Theel, Inc., Whitey's, Inc., RFJS Company, LLC, Jim Marsh American Corporation, Livonia Chrysler Jeep, Inc., Barry Dodge Inc.

RICHARD D. FAULKNER, Faulkner ADR Law, Richardson, TX, for plaintiffs-appellants Guetterman Motors, Inc., Mike Finnin Motors, Inc.  Also represented by HARRY ZANVILLE, La Mesa, CA.

ELIZABETH MARIE HOSFORD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by CHRISTOPHER JAMES CARNEY, JEFFREY B. CLARK, KENNETH DINTZER, ROBERT EDWARD KIRSCHMAN, JR., ALISON VICKS.

————————————

Before DYK, TARANTO, and STOLL, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Before mid-2009, the plaintiffs in these cases were automobile dealers operating as franchisees of Chrysler LLC. In that year, Chrysler filed a petition for reorganization in bankruptcy, and it rejected the franchise agreements in the bankruptcy proceeding under 11 U.S.C. § 365.  Plaintiffs sued the United States in the Court of Federal Claims,

alleging that the government played a role in Chrysler's rejection of the franchise agreements that constituted a taking of their property, requiring just compensation under the Takings Clause of the Fifth Amendment to the United States Constitution. In 2014, agreeing with the Claims Court, we allowed the case to proceed beyond the pleading stage. *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142 (Fed. Cir. 2014). On remand, the Claims Court, after a full trial, rejected the claims on two grounds—first, that the government's actions did not amount to coercion of Chrysler's decision to reject the franchise agreements and, second, that plaintiffs did not prove that the franchise agreements would have had value but for those actions. *Colonial Chevrolet Co, Inc. v. United States*, 145 Fed. Cl. 243 (2019) (*Trial Opinion*). On plaintiffs' appeal, we now affirm on the latter ground and do not address the former.

## I

## A

Taylor & Sons, Inc. (Taylor) and Mike Finnin Motors, Inc. (Finnin) are two of the nine plaintiffs-appellants, all of whom, like many other dealers, had their franchise agreements with Chrysler rejected in the 2009 Chrysler bankruptcy proceeding. Taylor and six other plaintiffs-appellants have been called the "Alley's dealers," and Finnin and one other plaintiff-appellant have been called the "Colonial dealers," reflecting the names of the first-named plaintiffs in the actions filed and consolidated in the Claims Court.

In late 2008, Chrysler, which had been experiencing significant difficulties that were exacerbated by a general market crisis, sought financial assistance from the federal government. The Department of the Treasury entered into a Loan and Security Agreement (Agreement) with Chrysler. The Agreement provided for an immediate bridge loan (totaling $4 billion) to Chrysler and also provided for further, more wide-ranging negotiations—in which the

Treasury Department's new Auto Team Task Force (Auto Team) was to play a central role—aimed at enabling the Chrysler business to continue operating over the long term. J.A. 10460 (§ 7.20(b)).  The Auto Team and Chrysler ultimately agreed on a plan under which Chrysler would file for reorganization, the government would supply substantial funding during the bankruptcy process, and a newly formed entity (to be owned in part by Italian vehicle manufacturer Fiat) would take over the business.  One issue discussed during the negotiations was reducing the number of Chrysler's dealer-franchisees, which Chrysler had been doing for many years through its "Project Genesis," though more gradually and with a greater role for franchisees' choice than was now discussed.  J.A. 10365–66, 10378–82.

Chrysler filed for bankruptcy on April 30, 2009.  *In re Chrysler LLC*, 405 B.R. 84, 87–88 (Bankr. S.D.N.Y. 2009).  Two weeks later, on May 14, 2009, Chrysler, as debtor-in-possession, invoked its right under 11 U.S.C. § 365 to "assume or reject any executory contract" by filing a motion to approve rejection 789 franchise agreements, including those of the Alley's and Colonial dealers.  *Id.* at 88.  The bankruptcy court approved the rejection on June 9, 2009, effective immediately, with the result that the now-former franchisees could no longer exercise franchise-agreement rights, such as holding themselves out as authorized Chrysler dealers and providing warranty-covered service for which Chrysler would pay.  Order Rejecting Executory Contracts, *In re Chrysler LLC*, No. 09-50002, ECF No. 3802 (Bankr. S.D.N.Y. 2009).

B

Following rejection of their franchise agreements, plaintiffs filed the present actions, alleging that the federal government had committed a taking by its actions that assertedly coerced Chrysler's rejection of the franchise agreements in bankruptcy.  When the government moved to

dismiss the claims for failure to state a claim, the Claims Court denied the motion, *Colonial Chevrolet Co., Inc. v. United States*, 103 Fed. Cl. 570 (2012); *Alley's of Kingsport, Inc. v. United States*, 103 Fed. Cl. 449 (2012), but granted the government's motion for interlocutory appeal, *Colonial Chevrolet Co., Inc. v. United States*, 106 Fed. Cl. 619 (2012); *Alley's of Kingsport, Inc. v. United States*, 106 Fed. Cl. 762 (2012).

On the interlocutory appeal, we affirmed the denial of dismissal and remanded the case. *A & D Auto Sales*, 748 F.3d at 1147, 1159. We concluded that plaintiffs had alleged sufficient facts for the takings claim to pass muster at the motion-to-dismiss stage, save for their failure to allege a loss of economic value because the complaints "d[id] not sufficiently allege that the economic value of the plaintiffs' franchises was reduced or eliminated as a result of the government's actions." *Id.* at 1147. And we remanded with instructions to grant plaintiffs leave to amend their complaints to allege economic loss of "but-for economic use or value" in the absence of government financing. *Id.* at 1157–58.

On remand, the complaints were amended, then the case proceeded through discovery and a trial, after which the Claims Court entered findings of fact and conclusions of law that rejected the dealers' takings claims on two grounds, each sufficient for judgment against the dealers. The court ruled first that the challenged government actions that led to Chrysler's franchise terminations—focused on conditions the government placed on its provision of funding—did not constitute a taking because those actions did not rise to the level of "coercion" as the trial court understood our holding in *A & D Auto Sales*. *Trial Opinion*, 145 Fed. Cl. at 249, 316–22. The Claims Court also ruled that, in any event, the taking claim failed on a separate ground: the dealers failed to prove that their franchise agreements would have had positive value in a "but for

world" without the government's challenged actions. *Id.* at 249, 322–24.

The Claims Court entered final judgment against the dealers on October 2, 2019. The dealers timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

Whether government action constitutes a compensable taking is a question of law based on factual underpinnings. *See Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001). We review the Claims Court's legal conclusions de novo and its factual findings for clear error. *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1265 (Fed. Cir. 2017). Findings of fact are "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gadsden Indus. Park, LLC v. United States*, 956 F.3d 1362, 1368 (Fed. Cir. 2020) (internal quotation marks and citations omitted). "'The fact-finder has broad discretion in determining credibility'" of witnesses. *J.C. Equip. Corp. v. England*, 360 F.3d 1311, 1315 (Fed. Cir. 2004) (quoting *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993)).

On appeal, plaintiffs challenge both of the Claims Court's rulings. We conclude that the Claims Court committed no reversible error in determining that the dealers failed to prove a positive value that their franchise agreements would have had but for the challenged government actions. That conclusion suffices for affirmance. We do not reach the Claims Court's no-coercion ruling.

The Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. There is no compensable taking when the alleged economic impact of the government action has not resulted in a diminution in value. *See A & D Auto Sales*, 748 F.3d at 1157 (collecting cases); *see also Love*

*Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1342 (Fed. Cir. 2018); *Cienega Gardens v. United States*, 331 F.3d 1319, 1340 (Fed. Cir. 2003).[1] "It is the property owner who bears the burden of proving an actual loss has occurred"; the property owner must "show actual damages 'with reasonable certain[t]y,' which 'requires more than a guess, but less than absolute exactness.'" *Gadsden*, 956 F.3d at 1371 (quoting *Otay Mesa Prop., L.P. v. United States*, 779 F.3d 1315, 1323 (Fed. Cir. 2015)) (cleaned up).

The trial court did not clearly err in finding that the dealers failed to meet their burden. The dealers have conceded that Chrysler would have petitioned for bankruptcy, and proceeded to liquidate, in a hypothetical, but-for world without government financial assistance. *Trial Opinion*, 145 Fed. Cl. at 247; Alley's Op. Br. 44; Colonial Op. Br. 36. The dealers' but-for-world valuations of the franchise agreements—presented by experts Diane Anderson Murphy and Edward Stockton—rested on premises about how Chrysler or a bankruptcy trustee would have treated the franchise agreements in such a liquidation. The Claims Court rejected those crucial premises about the but-for-world franchise treatment as unsupported and unpersuasive. *Trial Opinion*, 145 Fed. Cl. at 319, 322–24. We see no basis for reversing that determination, which leaves plaintiffs with no reliable proof of the but-for-world value they must establish.

---

[1] In their opening brief, the Colonial dealers argue that the government actions at issue were "a *per se* direct taking, akin to a physical taking," Colonial Op. Br. 38–39, but they present no argument that this characterization, even if correct, modifies their burden to prove the loss in value of the franchise agreements but for the challenged government actions. We therefore apply the loss-in-value requirement here without regard to other issues about the proper characterization of the claim for takings analysis.

The Claims Court found that "a trustee in bankruptcy would have rejected all franchise agreements to protect the assets of the bankruptcy estate." *Trial Opinion*, 145 Fed. Cl. at 323. The evidence supports that finding. Donald MacKenzie, one of the government's expert witnesses, testified that "Chrysler could not have paid its dealers for any warranty service performed after the [bankruptcy] petition date, nor could the company have provided assurance of future performance under the dealer franchise agreements," due to the company's high debt. Testimony of Donald MacKenzie, Tr. 4076:10–14 (May 3, 2019), No. 1:10-cv-00647, ECF No. 480; *id.* at 4045:15–19; *see Trial Opinion*, 145 Fed. Cl. at 319, 323. There was evidence that Chrysler, in an unassisted liquidation, would have ceased production and other activities. *Trial Opinion*, 145 Fed. Cl. at 294. With context-describing support from former Bankruptcy Judge Gerber, Mr. MacKenzie also testified that Chrysler's obligation under the franchise agreements to purchase back unsold vehicles and parts in the event of termination (triggered by a discontinuance of production, J.A. 10113) was a liability that, consistent with fiduciary and trustee duties, would have been avoided in a liquidation by a rejection of the franchise agreements. *See Trial Opinion*, 145 Fed. Cl. at 307–09, 319, 323–324. The Claims Court reasonably found that, in a liquidation (in a but-for world), the franchise agreements of plaintiffs would have been rejected.

That finding amply supports the Claims Court's refusal to credit the valuation opinions of the plaintiffs' experts. The valuation opinion of Ms. Murphy, for the Alley's dealers, rested on the contrary assumption—that the franchise agreements would *not* have been rejected in a liquidation, so that the dealerships would have continued to operate as Chrysler dealerships and sell Chrysler vehicles. *See, e.g.*, *id.* at 254–255, 284; Testimony of Diane Anderson Murphy, Tr. 1749:4–7 (Apr. 15, 2019), No. 1:10-cv-00647, ECF No. 462 ("Q. Your valuation certainly assumes that the dealers will last more than five years, correct? A. The dealership

would last more than five years, yes."); *id.* at 1750:1–6 ("You write . . . 'even in the absence of Government funding and Chrysler having entered bankruptcy, the franchise agreements of the Chrysler franchisees would remain in full force and effect.' Correct? A. Yes."). The same is true of the valuation testimony of the Colonial dealers' valuation expert Mr. Stockton. *See Trial Opinion*, 145 Fed. Cl. at 323.

There also were other unpersuasive assumptions built into the opinions of the dealers' valuation experts. For example, the Claims Court found a number of additional assumptions by Ms. Murphy unsupported by the evidentiary record, *Trial Opinion*, 145 Fed. Cl. at 323 n.46—a finding not challenged on appeal. The Claims Court, relying on testimony of Mr. MacKenzie and others, rejected, as well, the assumption embedded in Mr. Stockton's valuation that the federal government would have chosen to continue to cover Chrysler warranties after Chrysler began to liquidate. *Id.* at 303 n.41, 319, 323. Further, based on the fact that the property at issue here consists of contract rights, *see Taylor v. United States*, 959 F.3d 1081, 1087 (Fed. Cir. 2020) (noting Takings Clause precedents involving contract rights)—specifically, the plaintiffs' rights under their franchise agreements—the Claims Court noted that Ms. Murphy testified that her calculations included tangible property beyond the rights in the franchise agreements, *see* J.A. 21797 (Tr. 1542:2–22), yet her opinion "did not separately analyze how these tangible assets contributed to the plaintiff's income stream profits, separate from the franchise agreement allegedly taken," *Trial Opinion*, 145 Fed. Cl. at 322. The same was true of Mr. Stockton's valuation, which he testified included, beyond the terms of the franchise agreements, "other elements of value associated with franchise operations." *Trial Opinion*, 145 Fed. Cl. at 286; *see also* J.A. 22611 (Tr. 2356:15–16). "[W]hat was important was for the focus to be on awarding just compensation for exactly what had been taken in the case." *Otay*

*Mesa Prop., L.P.*, 779 F.3d at 1320. The Claims Court reasonably found the testimony of the dealers' experts not adequately so focused.

We conclude that the record supports the Claims Court's rejection of crucial assumptions of the plaintiffs' experts and finding that the plaintiffs did not provide a reliable proof that, in the but-for world, the franchise agreements would have had a positive value. The Claims Court's finding is not clearly erroneous. And contrary to the Colonial dealers' contention, Colonial Op. Br. 51–52, the finding of no proof of but-for-world value of the specific property at issue does not rest on any exclusion by the Claims Court of a legally legitimate method of proving value. The variations in methodology discussed by the Colonial dealers are immaterial given the Claims Court's well-supported rejection of the plaintiffs' experts' assumption about the treatment of the franchise agreements in the liquidation that would concededly have occurred in the but-for world.

We have considered the dealers' remaining arguments and find them unpersuasive.

### III

For the foregoing reasons, we affirm the trial court's judgment.

**AFFIRMED**