# United States Court of Appeals for the Federal Circuit

---

**BUDDY TAYLOR, DONNA TAYLOR,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-1901

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01082-TCW, Judge Thomas C. Wheeler.

---

Decided: May 15, 2020

---

A. BLAIR DUNN, Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, NM, argued for plaintiffs-appellants. Also argued by MARSHALL RAY, Law Offices of Marshall J. Ray, LLC, Albuquerque, NM.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; MICHAEL CASILLO, Air Force Legal Operations Agency, Joint Base Andrews, MD.

---

Before PROST, *Chief Judge*, O'MALLEY and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Buddy and Donna Taylor allege that, after they purchased land near a United States Air Force base in New Mexico, the Air Force began flying training missions low over the land. Several years later, the Taylors entered into an agreement with Wind Energy Prototypes, LLC, giving the company an exclusive option to obtain an easement it could use to build and operate structures to collect energy from wind. The Taylors allege that during the term of the option, employees of the Air Force informally advised Wind Energy that the Federal Aviation Administration would not issue a No Hazard designation for such structures on the land. Thereafter, Wind Energy, rather than exercising the option, terminated the contract with the Taylors, a decision that the Taylors acknowledge was permitted by their contract with Wind Energy.

The Taylors sued the federal government in the Court of Federal Claims. The complaint is properly understood as making essentially two claims—that the Air Force's informal advice to Wind Energy effected a regulatory taking of the Taylors' property interest in their contract with Wind Energy, and that the Air Force's flyovers effected a physical taking of their property interest in their land and associated air space. The trial court dismissed the complaint, concluding that it lacked jurisdiction over the regulatory-taking claim and, on the merits, that both taking claims failed to state a claim on which relief could be granted. We reverse the jurisdictional ruling but affirm the dismissal on the merits.

I

The complaint alleges that in 1999 the Taylors purchased a large plot of land near a United States Air Force base in New Mexico. They use the land to raise stocker

calves. After the purchase, the complaint says, the Air Force began flying training missions over the land, sometimes "no more than 20 feet . . . off the deck." J.A. 28.

In October 2008, the Taylors entered into an agreement with Wind Energy. The agreement, which is attached to the complaint, granted Wind Energy an exclusive option for an easement, into and on the Taylors' property, for "wind resource evaluation, wind energy development, energy transmission and related wind energy development uses." J.A. 38–62. The agreement provided Wind Energy five years (the "option term") to exercise the easement option, during which Wind Energy could terminate the agreement without fee, upon giving the Taylors appropriate notice. J.A. 38, 49.

In mid-2012, according to the complaint, employees of the Air Force on the nearby base suggested to Wind Energy that the Federal Aviation Administration (FAA) would not issue a "No Hazard" designation for the air space above the Taylors' land. J.A. 29–30. The absence of such a designation, the complaint alleges, is "fatal to the construction of planned wind turbines because other regulatory agencies will withhold permits for construction" and "financing becomes impracticable." J.A. 29. On September 11, 2012, within the option term, Wind Energy exercised its contractual right to terminate the agreement. J.A. 65.[1]

---

[1] Although the complaint contains a passing reference to "breach" by Wind Energy, J.A. 32, the Taylors explained during oral argument in this court that they were not alleging that Wind Energy breached the contract—which, by its terms, gave Wind Energy a right to terminate when and as it did, J.A. 49. Oral Argument at 6:40–7:18; *see also* J.A. 49. We read the complaint in accordance with that acknowledgment.

On July 25, 2018, the Taylors sued the United States in the Court of Federal Claims.  Fairly read, and as understood in the trial court, the complaint makes two claims: (1) the government effected a regulatory taking of the Taylors' property interest in its contract with Wind Energy when Air Force personnel led Wind Energy to terminate the contract by suggesting that the FAA would not issue a "No Hazard" designation; (2) the Air Force's flyovers effected a physical taking of their property interest in the land and associated air space.  The government filed a motion to dismiss under Court of Federal Claims Rule 12(b)(1) for "lack of subject-matter jurisdiction" and under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  The trial court granted the motion and dismissed the complaint.  *Taylor v. United States*, 142 Fed. Cl. 464 (2019).  The trial court dismissed the regulatory-taking claim for lack of subject-matter jurisdiction and also for failure to state a claim.  *Id.* at 470–72.  The court dismissed the physical-taking claim for failure to state a claim.  *Id.* at 472–73.

The Taylors timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

We review the dismissal for lack of subject-matter jurisdiction de novo.  *Biltmore Forest Broadcasting FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).  We review the dismissal for a failure to state a claim on which relief can be granted de novo.  *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).  The complaint must allege facts "'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Palmyra Pacific Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1366–67 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  We accept the well-

pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A

At the outset, we reject the trial court's holding that the court lacked subject-matter jurisdiction over the Taylors' regulatory-taking claim. *Taylor*, 142 Fed. Cl. at 470–72. The Tucker Act gives the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The trial court held that it lacked jurisdiction, despite the express allegation of a claim founded on the Takings Clause of the Fifth Amendment to the Constitution, because the complaint also describes the Air Force actions at issue as meeting the elements of a state-law tort. *Taylor*, 142 Fed. Cl. at 470–72. But we have rejected such a rationale for denying Tucker Act jurisdiction.

As a substantive-law matter, we have recognized that "the same operative facts may give rise to both a taking and a tort." *Moden v. United States*, 404 F.3d 1335, 1339 n.1 (Fed. Cir. 2005) (relying on *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999), and other cases). And in *El-Shifa Pharmaceutical Industries Co. v. United States*, we specifically held that Tucker Act jurisdiction existed over a complaint that asserted a taking claim notwithstanding that the complaint also characterized the same government conduct as tortious. 378 F.3d 1346, 1353–54 (Fed. Cir. 2004). We noted that the complaint invoked the Takings Clause and sought a remedy under that clause, and we concluded: "That the complaint suggests the United States may have acted tortiously towards the appellants does not remove it from the jurisdiction of the Court of Federal Claims." *Id.* at 1353. We

explained that, even if the complaint's tort characterization made the complaint a "multipurpose" one, "[t]he multipurpose nature of the complaint did not deprive the Court of Federal Claims of jurisdiction to entertain the takings claim alleged therein." *Id.* at 1354. In so ruling, we applied to a tort-taking overlap the dual-wrong rationale of *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1363–64 (Fed. Cir. 1998), and *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001).

That precedent applies to this case. The Taylors chose to challenge the alleged Air Force action as a Fifth Amendment taking of their property interest in the Wind Energy contract. There is "ample precedent for acknowledging a property interest in contract rights under the Fifth Amendment." *Cienega Gardens v. United States*, 331 F.3d 1319, 1329 (Fed. Cir. 2003); *see also Lynch v. United States*, 292 U.S. 571, 579 (1934) ("The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States."). That the complaint also indicates that the Air Force action constituted tortious interference with a contract does not remove the taking claim from the jurisdiction of the Court of Federal Claims under the Tucker Act.[2]

---

[2]    This case does not involve a situation in which the conduct alleged is a tort that, as a matter of law, is not a taking. In this respect, the case differs from the allegations of patent infringement against the federal government at issue in *Schillinger v. United States*, 155 U.S. 163 (1894). *See Golden v. United States*, 955 F.3d 981, 986–88 (Fed. Cir. 2020).

B

The Taylors' regulatory-taking claim nevertheless fails on the merits as a matter of law.  The Taylors invoke the standards for a regulatory taking that call for "ad hoc, factual inquiries into the circumstances of each particular case."  *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224 (1986).  In *Penn Central Transportation Co. v. City of New York*, the Supreme Court considered three factors: (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the government action."   438 U.S. 104, 124 (1978); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) (considering "reasonable investment-backed expectations").  We conclude that the Taylors' regulatory-taking claim cannot pass muster under those standards, even without further factual inquiry.

1

The first factor, the economic impact of the regulation on the Taylors, weighs so strongly against finding a regulatory taking that it might be decisive on its own—something we need not decide because the full three-factor analysis leads to the same conclusion.  As we have noted, the Taylors acknowledge that Wind Energy's termination was not a breach of the agreement it had with the Taylors.  The Taylors thus have not identified Fifth Amendment property in the form of "contract *rights*" against their contract counterparty (Wind Energy) that have been taken from them.  *Cienega Gardens*, 331 F.3d at 1329 (emphasis added).  And they have not identified any takings law that treats as a protected form of "property" a person's interest in the benefits of a contract that the counterparty may freely terminate (and, here, terminated without any plausible allegation of government coercion).  At a minimum, in resting their regulatory-taking claim entirely on alleged harm to their contractual relationship, the Taylors'

complaint contains no allegation of any material harm to a constitutionally protected aspect of that relationship.[3]

2

The second factor, the extent to which the regulation interferes with the Taylors' distinct, reasonable investment-backed expectations, also weighs against finding a regulatory taking. Although the regulatory-taking claim is focused entirely on the loss of the hoped-for benefits of the 2008 Wind Energy contract, the complaint states no facts indicating that the Taylors made any investment specifically related to that contract. The only investment reflected in the complaint is the purchase of the land in 1999. And even as to that, the complaint does not allege that the purchase was made with any expectation as to use of the property for harvesting wind energy. There are no material "distinct investment-backed expectation[s]." *Penn Central*, 438 U.S. at 124.

Besides lacking support for an inference of investment-backed expectations regarding wind energy, the Taylors' claim supports no inference of reasonable expectations as to freedom from regulatory actions that might adversely affect use of the land for harvesting wind energy. We have

---

[3]    The Takings Clause's focus on particular property interests is reflected in the longstanding rule that the clause does not provide for compensation for "consequential losses." *United States v. General Motors Corp.*, 323 U.S. 373, 379–80 (1945) ("The rule in [a takings] case is that compensation for that [property] interest does not include . . . consequential losses."); *see Mitchell v. United States*, 267 U.S. 341, 345 (1925) ("The settled rules of law however, precluded his considering in that determination consequential damages for losses to their business, or for its destruction."); *cf. Monongahela Navigation Corp. v. United States*, 148 U.S. 312, 326 (1893).

articulated three considerations relevant to that issue: (a) "whether the plaintiff operated in a 'highly regulated industry'"; (b) "whether the plaintiff was aware of the problem that spawned the regulation at the time it purchased the allegedly taken property"; and (c) "whether the plaintiff could have 'reasonably anticipated' the possibility of such regulation in light of the 'regulatory environment' at the time of purchase." *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1349 (Fed. Cir. 2004) (quoting *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1348 (Fed. Cir. 2001) (en banc)); *see Reoforce, Inc. v. United States*, 853 F.3d 1249, 1270 (Fed. Cir. 2017). All three considerations weigh against the Taylors.

Airspace used for aircraft is highly regulated. *See* 49 U.S.C. § 40103(b)(1) (The FAA "shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace."); *see also* 49 U.S.C. § 44718(a)(1) ("[T]he Secretary of Transportation shall require a person to give adequate public notice . . . of the construction . . . of a structure . . . when the notice will promote . . . safety in air commerce."). Such strict regulation weighs against the Taylors' claim, although "[a] property owner does not automatically relinquish her Fifth Amendment rights by entering a highly regulated industry," *Reoforce*, 853 F.3d at 1270; *see Ruckelshaus*, 467 U.S. at 990 (finding regulatory taking in an industry "regulated . . . for nearly 75 years."). Moreover, at the time the Taylors contracted with Wind Energy in 2008, they knew that the Air Force flew "training missions, sometimes no more than 20 feet . . . off the deck." J.A. 28 ¶ 12. The FAA regulations regarding hazard designations were also in place long before the Taylors purchased the property in 1999. *See, e.g.*, *Flowers Mill Assoc. v. United States*, 23 Cl. Ct. 182, 186 (1991) (discussion of FAA No Hazard designations). When buying the land at issue, located near an Air Force base, the Taylors should have "reasonably

anticipated" that the FAA might not issue a No Hazard designation for their land.  Thus, the Taylors' distinct investment-backed expectations weigh against finding a regulatory taking.

3

The third *Penn Central* factor, the character of the government action, also weighs against finding a regulatory taking here.  The action at issue is not the denial of a No Hazard designation.  Rather, it is Air Force employees' giving of information and advice to Wind Energy suggesting that the FAA would not issue a No Hazard designation.  *See* J.A. 18, 29–30; *see also* Oral Argument at 8:52–9:02 ("It's not that the FAA gave some sort of presumption of [whether a No Hazard designation would issue], it's that the Air Force said [that] this is not going to be forthcoming.").

That action falls into no category of government action we have recognized as supporting a regulatory-taking claim.  It is not even the action of the FAA, which was not asked by Wind Energy or the Taylors for a No Hazard designation.  The challenged action by Air Force personnel did not have a "legal effect or impose a direct legal obligation on any party."  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1309 (Fed. Cir. 2015).  It was not a form of coercive government action at all, but at most a form of "persuasion," convincing Wind Energy of something assertedly relevant to its prospects for having air clearance for contemplated wind towers.  *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1154 (Fed. Cir. 2014) ("The line between coercion (which may create takings liability) and persuasion (which does not create takings liability) is highly fact-specific and hardly simple to determine.").  And there is no issue here of a withholding of specifically promised government approval after large investments were made on the basis of the promise.  *See United Nuclear Corp. v. United States*, 912 F.2d 1432 (Fed. Cir. 1990).

The character of the government action counts against finding a taking. The Taylors cannot deny that the action was within the "authority" of those who took it; such a denial would defeat their taking claim.[4] The dissemination of information is a legitimate agency function, especially in the context of public safety. *See Dimare Fresh*, 808 F.3d at 1311. And we have already held that there are good reasons for caution about subjecting agency information disclosures, even informal disclosures, to the risk of takings liability, especially when there are alternative means of checking harmful disclosures. *Id.* at 1309–12.

In sum, each of the *Penn Central* factors weighs strongly against finding a regulatory taking. Together they mean that the Taylors' claim, on the allegations of their complaint, cannot succeed as a matter of law.

III

A

The complaint in this case also alleges that the government's overflights have effected a physical taking of the Taylors' "compensable property interests in the air space above their fee property." J.A. 31 ¶ 29. The trial court concluded that the complaint provides legally insufficient

[4]      A government action cannot be a taking if "the administrative agency lacked the authority to regulate the property it 'appropriated,'" *Dimare Fresh*, 808 F.3d at 1308, or, more generally, if the government actors lacked the "authority" to take the action, *Del-Rio Drilling*, 146 F.3d at 1362 (explaining nature of "authority" rule). *See United States v. N. American Transp. & Trading Co.*, 253 U.S. 330, 333 (1920) ("In order that the government shall be liable it must appear that the officer who has physically taken possession of the property was duly authorized so to do."); *Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898–99 (Fed. Cir. 1986).

factual support to survive a motion to dismiss the asserted physical-taking claim. *Taylor*, 142 Fed. Cl. at 473. We agree.

Under *United States v. Causby*, "[f]lights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." 328 U.S. 256, 266 (1946). In applying that standard for finding an imposition of an "avigation easement," we have considered (1) whether the planes flew directly over the claimant's land; (2) whether the flights were low and frequent; and (3) whether the flights directly, immediately, and substantially interfered with the claimant's enjoyment and use of the land. *Brown v. United States*, 73 F.3d 1100, 1102 (Fed. Cir. 1996). The Taylors' complaint sufficiently alleges the first factor, but not the others.

The Taylors allege that "military aircraft regularly fly training routes at altitudes below . . . 500 feet [above ground level] over [the Taylors'] property." J.A. 30 ¶ 22. The trial court determined that the Taylors did not "allege that the flights were frequent enough to state a claim for an avigation easement." *Taylor*, 142 Fed. Cl. at 473. In the absence of greater specificity, "regularly" is not a factual allegation that can support an inference of the required frequency. There are no further allegations of how often flights occur.

Nor have the Taylors provided any factual allegations of how the flights "directly, immediately, and substantially interfere" with their quiet enjoyment and use of the land. The complaint describes the Taylors' ranch operations as the "buying and straightening out [of] stocker calves" but fails to allege how the overflights affect those operations. J.A. 28 ¶ 8. The complaint simply pleads that the Air Force "engage[s] in conduct and actions to inversely condemn the Taylor[s'] compensable property interest in the air space above their private property and the quiet enjoyment of the

reminder of their property interests." *Id.* ¶ 11; *see also* J.A. 33 ¶ 38 (The government's actions "impaired [the Taylors'] right to use their property interests as they saw fit."). These allegations are insufficient because they do no more than recite "labels and conclusions" and repeat the elements of the cause of action without providing sufficient factual information. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Therefore, the Taylors failed to state a claim for a physical taking.

B

The trial court dismissed the Taylors' physical-taking claim. *Taylor*, 142 Fed. Cl. at 474 ("[T]he Court grants the Government's Motion to Dismiss as to all [the Taylors'] claims." (capitalization altered)). The Taylors argue that we should vacate the dismissal and remand to allow them to amend their complaint. The trial court, however, did not abuse its discretion in dismissing the complaint.

Court of Federal Claims Rule 15(a)—which is identical in all material respects to Federal Rule of Civil Procedure 15(a)—prescribes when a party may amend its pleadings before trial. As a matter of course, a party may amend its pleadings within 21 days after service of the pleading or 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f), whichever is earlier. Ct. Fed. Cl. R. 15(a)(1). If a party wishes to amend a pleading outside Rule 15(a)(1), it may do so with either the opposing party's written consent or the court's leave. Ct. Fed. Cl. R. 15(a)(2). And "[t]he court should freely give leave when justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought [under Federal Rule of Civil Procedure

15(a)] should, as the rules require, be 'freely given.'" (quoting Fed. R. Civ. P. 15(a))).

At no point during the trial court's proceedings, however, did the Taylors seek to invoke any part of Rule 15(a) to amend their complaint—not on their own, not with the government's permission, and not with the court's permission, even after the dismissal.  We will not find an abuse of discretion on the part of the trial court with respect to a request for amendment never made to it.

## IV

For the foregoing reasons, we reverse the dismissal for lack of subject-matter jurisdiction but affirm the dismissal for failure to state a claim.

The parties shall bear their own costs.

**REVERSED IN PART AND AFFIRMED IN PART**