NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HOLLY BERRY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-2031

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01017-KCD, Judge Kathryn C. Davis.

---

Decided:  February 29, 2024

---

DONALD A. LEPP, Drummond Law PLLC, Tulsa, OK, argued for plaintiff-appellant.

THEKLA HANSEN-YOUNG, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by TODD KIM.

---

Before CHEN, STOLL, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge.*

Ms. Holly Berry appeals from the decision of the United States Court of Federal Claims dismissing her amended complaint for failing to state a viable Fifth Amendment takings claim. *Berry v. United States*, 159 Fed. Cl. 844 (2022) ("*Decision*"). For the reasons below, we *affirm*.

## I. BACKGROUND

Ms. Berry owns land in Oklahoma. J.A. 31 ¶ 7; J.A. 38; *Decision* at 846. In July 2014, the Cherokee Nation submitted an application requesting the United States Department of the Interior's Bureau of Indian Affairs acquire in trust land ("the Cherokee Springs Site") for gaming and other purposes, which was located adjacent to Ms. Berry's land. *See* J.A. 42–43; *Decision* at 846.

In January 2017, the Department of the Interior issued a letter approving the Nation's application to acquire in trust the Cherokee Springs Site for the benefit of the Nation pursuant to Section 5 of the Indian Reorganization Act. *See* J.A. 42–44, 57; *Decision* at 846; 25 U.S.C. § 5108. The letter identified an environmental assessment, *see* J.A. 53–57, which concluded that the Nation's proposed "[c]onstruction of the casino/hotel would create a greater area of impervious surfaces than currently exists on the project site, potentially increasing surface flow rates." J.A. 54; *see Decision* at 846. But the assessment also stated that "implementation of mitigation measures" and "Best Management Practices" would mitigate potential environmental impacts. *See* J.A. 54; *Decision* at 846.

In March 2021, Ms. Berry filed suit against the United States, alleging that the federal government, as trustee of the Cherokee Springs Site, took a flowage easement and detention pond on Ms. Berry's property. J.A. 18 ¶ 1, 19 ¶ 8 & n.2, 22 ¶¶ 22–24; *Decision* at 846–47. The United States moved to dismiss the complaint for failure to state a claim and for lack of subject-matter jurisdiction. *Decision* at 847.

Ms. Berry then amended her complaint.[1] J.A. 30–37; *Decision* at 847. In the amended complaint, Ms. Berry alleges her land "experienced severe flooding, erosion, and impoundment of water" "due to the failure of [the United States] to ensure properly designed water runoff" from the Nation's property held in trust. J.A. 35 ¶ 20; *see Decision* at 846. Ms. Berry further alleges that "[s]ince the [Nation] commenced construction in 2016, diverted water has substantially interfered" with her use of her land. J.A. 35 ¶ 20. Ms. Berry contends that the Nation entered her land, removed vegetation, and dug a drainage ditch without her permission, "creating a drainage easement for the commercial improvements" that are now at the Nation's gaming facility on the Cherokee Springs Site. J.A. 35 ¶ 21; *see Decision* at 846. In sum, Ms. Berry contends that "increased flooding, caused by [the United States'] actions and inactions, constitutes a taking" upon her property. J.A. 35 ¶ 22; *see Decision* at 846. The United States moved to dismiss the amended complaint for failure to state a claim. *Decision* at 847.

In May 2022, the Court of Federal Claims granted the United States' motion to dismiss the amended complaint. *Id.* at 846, 851. The Court of Federal Claims found that Ms. Berry's takings claim failed because she did not allege direct governmental action effecting a taking. *See id.* at 846–49, 851.

Ms. Berry appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

We review de novo dismissal of a complaint by the Court of Federal Claims for failure to state a claim. *Taylor*

---

[1]    The United States' motion to dismiss the original complaint became moot after Ms. Berry filed her amended complaint. *Decision* at 847 n.1.

*v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020) (citation omitted). "The complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Id.* (internal quotation marks omitted) (quoting *Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1366–67 (Fed. Cir. 2009)). "[A]t this stage of the proceedings we must accept the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff[.]" *Palmyra*, 561 F.3d at 1366 (citation omitted).

## III. DISCUSSION

On appeal, Ms. Berry argues that the Court of Federal Claims erred in dismissing her takings claim because the government took the Cherokee Springs Site into trust, allowing the construction of a gaming facility, which ultimately led to the flooding of Ms. Berry's property. *See* Appellant's Br. 5–6. Ms. Berry contends that such alleged acts constitute a viable takings claim that was wrongly dismissed at the pleading stage. *See id.* We find Ms. Berry's arguments unpersuasive.

### A.

Ms. Berry argues that she has pled a viable takings claim because the government's affirmative acts of taking the Cherokee Springs Site into trust and allowing the Nation's construction on the site resulted in the flooding of her property. *See* Appellant's Br. 5–6, 8–15. We disagree.

A taking may occur where the government "floods lands belonging to an individual as to substantially destroy their value[.]" *Nw. La. Fish & Game Pres. Comm'n v. United States*, 446 F.3d 1285, 1289 (Fed. Cir. 2006) (citation omitted). "The language of the Fifth Amendment itself requires that the United States, not a third party, commit the taking action." *Navajo Nation v. United States*, 631 F.3d 1268, 1274 (Fed. Cir. 2011) (cleaned up) (quoting *All. of Descendants of Tex. Land Grants v. United States*, 37

F.3d 1478, 1482 (Fed. Cir. 1994)); *see also id.* ("A takings claim must be predicated on actions undertaken by the United States . . . ."). "In the flooding context, in particular, both Supreme Court precedent and our own precedent have uniformly based potential takings claims on affirmative government acts." *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1361 (Fed. Cir. 2018); *see also id.* at 1361 & n.4 ("In both physical takings and regulatory takings, government liability has uniformly been based on affirmative acts by the government or its agent.") (collecting cases). By contrast, "takings liability does not arise from government inaction or failure to act." *Id.* at 1361.

A claim for a "taking of a flowage easement" requires proof that the invasion to the property was the "direct, natural, or probable result" of the government's actions. *Id.* at 1359–60 (citations omitted); *see, e.g.*, *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003). It is the plaintiff's burden to establish causation by "show[ing] that in the ordinary course of events, absent government action, plaintiffs would not have suffered the injury." *St. Bernard*, 887 F.3d at 1362.

When drawing all inferences in favor of Ms. Berry and accepting all alleged facts in her amended complaint as true, Ms. Berry has failed to state a claim for takings liability against the United States. In the amended complaint, Ms. Berry at most alleges that the United States took the Cherokee Springs Site into trust. *See* J.A. 34 ¶ 18; *Decision* at 848. But Ms. Berry exclusively identifies *the Nation's* affirmative acts as the direct cause of the flooding on her property. *See* J.A. 35 ¶¶ 20–21. For example, and as the Court of Federal Claims explained, Ms. Berry alleges that the Nation, not the government, began construction in 2016, and diverted water has substantially interfered with her use of her real property since that time. *Decision* at 848; J.A. 35 ¶ 20. Because this alleged construction activity predates the United States' January 2017 acquisition, *see* J.A. 42, the flooding to Ms. Berry's property could not

be a "direct, natural, or probable result" of the United States' actions. *See St. Bernard*, 887 F.3d at 1359–60 (citations omitted). Similarly, Ms. Berry alleges that the Nation, not the United States, unlawfully entered her property to remove vegetation and dig a drainage ditch. J.A. 35 ¶ 21; *Decision* at 848. Accordingly, when examining the "character of the government's action" alleged in the amended complaint, we conclude that Ms. Berry failed to allege an affirmative action by the United States that was a direct cause of the flooding. *See Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998) (citation omitted) (finding no governmental action where the alleged taking was by livestock under the tribe's direct control, despite government's regulatory control over the livestock).

Ms. Berry argues two cases relied upon by the Court of Federal Claims—*Alliance of Descendants* and *Navajo Nation*—support her allegation that the United States' approval of the Nation's construction plans caused the taking on her land. *See* Appellant's Br. 11. We disagree.

Neither *Alliance of Descendants* nor *Navajo Nation* supports Ms. Berry's argument because both involved an affirmative governmental act that directly caused the alleged taking. In *Alliance of Descendants*, this court concluded that the United States' ratification of a treaty satisfied the governmental action requirement of a takings claim. *See* 37 F.3d at 1481–82 ("The claimants' takings claims thus accrued when the [treaty] went into effect."). In *Navajo Nation*, this court similarly concluded that "the Navajo Nation's takings claim, if any, accrued when the *United States* precluded it from developing land . . . without Hopi Tribe approval," not when the Hopi Tribe decided "to impose a moratorium on approval of Navajo construction projects." 631 F.3d at 1274 (emphasis added). Unlike the governmental acts in *Alliance of Descendants* and *Navajo Nation*, Ms. Berry did not plausibly allege that the United States' acquisition of the Cherokee Springs Site into trust deprived Ms. Berry of "all or most of [her]

property interest." *Id.* (quoting *Nw. La. Fish*, 446 F.3d at 1289). Rather, Ms. Berry alleged that it was only upon the Nation's development of the Cherokee Springs Site that the flooding occurred and any alleged taking arose of Ms. Berry's property. J.A. 35 ¶¶ 20, 22; *see Decision* at 848; *see also All. of Descendants*, 37 F.3d at 1482 (holding that an action by a third party "is not a specific taking action of the United States" and "create[s] no liability for the United States") (citation omitted).

Ms. Berry also argues that the Court of Federal Claims erred by relying on *Griggs v. County of Allegheny*, 369 U.S. 84 (1962). Appellant's Br. 9, 11. According to Ms. Berry, *Griggs* is inapposite because the court found that the county was solely responsible for the taking of an air easement over plaintiff's property. *Id.* at 11. We disagree that *Griggs* is so distinguishable from the case at hand. In *Griggs*, the Supreme Court held that Allegheny County, the owner of the airport, took an air easement over the land owner's property because it was the county that ultimately decided where to build the airport. *See* 369 U.S. at 88–90. The fact that the county's decisions were subject to federal regulatory approval did not make the federal government liable for the taking. *See id.* at 89–90. Similarly, the United States' approval of the Nation's proposed construction here does not make the United States liable for the alleged taking on Ms. Berry's property.

In sum, Ms. Berry has failed to plausibly allege any affirmative governmental action taken by the United States that was a direct cause of the flooding underlying Ms. Berry's takings claim. Therefore, Ms. Berry has not stated a viable takings claim against the government based on the United States' decision to acquire in trust the Cherokee Spring Site and allow the Nation's construction plans on the site.

B.

Ms. Berry next argues there is a viable takings claim because the United States is liable for the Nation's acts regardless of whether the government was directly involved in the design or construction of the casino facilities. Appellant's Reply Br. 6–8; *see also id.* at 2–3; Appellant's Br. 17–18. In particular, Ms. Berry contends the United States and the Nation have a quasi-agency relationship with "characteristics of both being an agency and coercive relationship," and therefore, the United States should be liable for the Nation's actions. *See* Appellant's Reply Br. 6–8. In other words, Ms. Berry argues that the Nation acts like an agent of the United States by engaging in gaming to further the "federal policy of creating Tribal self-determination." *See id.* at 2–3. We disagree that the Nation serves as a quasi-agent for the government here.

Third-party takings claims may be brought where a "third party is acting as the government's agent or the government's influence over the third-party was coercive rather than merely persuasive." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1154 (Fed. Cir. 2014) (collecting cases). A third-party takings claim may also arise where an "agency relationship results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Navajo Nation*, 631 F.3d at 1275 (citation omitted).

Here, Ms. Berry has not alleged any viable third-party takings claim because she does not allege that the Nation acted as the United States' agent or was coerced by the United States to construct facilities on the Cherokee Springs Site. *See* J.A. 34–36. Nor does Ms. Berry allege any agency relationship between the Nation and the United States. *See id.*; *Navajo Nation,* 631 F.3d at 1275 ("Here, the record contains nothing even to suggest that the Hopi Tribe was acting under the direction or control of

the United States when it imposed a moratorium on Navajo development efforts.") (citation omitted).  Ms. Berry also concedes that she did not allege that the Nation acted as a third party.  J.A. 84 (Court of Federal Claims: "Does Plaintiff make any allegations that the tribe was coerced or is acting as an agen[t] of the United States?"  Plaintiff's Attorney: "No, no."); Oral Arg. at 6:19–45, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2031_07132023.mp3 (counsel for Ms. Berry admitting that the Nation did not act as an agent of the United States when the alleged taking of a flowage easement occurred).

Ms. Berry understandably wants compensation for the flooding on her property.  However, this court cannot provide such relief because the acts Ms. Berry points to in her amended complaint cannot sustain a viable takings claim against the United States.  Although Ms. Berry will be unable to obtain the relief she seeks from the United States, our decision does not preclude Ms. Berry from separately attempting to seek relief from the Nation.

## IV. CONCLUSION

We have considered Ms. Berry's remaining arguments and find them unpersuasive.  For the reasons above, we *affirm* the dismissal by the Court of Federal Claims of Ms. Berry's amended complaint for failure to state a claim.

## AFFIRMED

### COSTS

No costs.