# United States Court of Appeals for the Federal Circuit

_____

**TEMOR S. SHARIFI,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2019-2382

_____

Appeal from the United States Court of Federal Claims in No. 1:16-cv-01090-BAF, Senior Judge Bohdan A. Futey.

_____

Decided: February 10, 2021

_____

CAROLYN L. GAINES, Philadelphia, PA, argued for plaintiff-appellant.

JOHN LUTHER SMELTZER, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, ERIC GRANT, ERIKA KRANZ, EDWARD CARLOS THOMAS.

_____

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

Temor S. Sharifi appeals from a decision of the United States Court of Federal Claims ("Claims Court") dismissing his claims against the United States for failing to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *Sharifi v. United States*, 143 Fed. Cl. 806 (2019). For the reasons explained below, we affirm.

## I. BACKGROUND

This appeal concerns land in Afghanistan that Sharifi alleges the U.S. Army took when it built Combat Outpost Millet ("COP Millet") in 2010. After Sharifi filed a complaint with the Department of Defense and received no response, he brought the underlying Fifth Amendment takings claim against the government in the Claims Court.

According to Sharifi's original complaint, approximately 100 years ago, Sharifi's grandfather acquired a land lot in Deh-e-Kowchay, Arghandab District, Kandahar in Afghanistan. J.A. 25–26, ¶¶ 4–5.[1] The land then passed to Sharifi's father, and when Sharifi's father died, Sharifi and his siblings subdivided the land among themselves. J.A. 26, ¶ 5. Sharifi leased his property to a tenant, who used the land for farming.

Around October 2010, then-Captain Walter A. Reed of the U.S. Army spoke twice with one of Sharifi's siblings about leasing Sharifi's land.[2] Sharifi later learned that the

---

[1] "J.A." refers to the Joint Appendix, available at Dkt. No. 37. "S.A." refers to the government's Supplemental Appendix, available at Dkt. No. 31.

[2] The government attached a declaration by now-Major Reed as an exhibit to its motion to dismiss,

Army had demolished houses and trees on his property and constructed COP Millet on his land and that of his neighbors. J.A. 26–27, ¶¶ 8, 13. At some point, Sharifi also directly contacted Captain Reed to provide proof of ownership of the land in the form of documentation that "had been verified by the District Governor for Arghandab District." J.A. 26, ¶ 11.

In response to Sharifi's complaint, the government moved for a more definite statement. The government asserted that Sharifi's complaint was "vague and ambiguous" because it did not specifically identify the property interest that the United States allegedly took, as required by Rule 9(i) of the RCFC. J.A. 30. In particular, the government claimed that Sharifi had not provided a legal description of the land, a deed, or other document that would allow the United States to identify the location of the land lot that Sharifi's grandfather acquired. J.A. 30. And Sharifi had not provided a legal description of his property interest, official documentation describing the portion of property conveyed to him, or a sufficient description of where his portion of the land lot is located. J.A. 30–31.

The Claims Court granted the government's motion, instructing Sharifi to file an amended complaint "specifically identifying the land that he owns" that the United States took. *Sharifi v. United States*, No. 16-1090L, 2017 WL 461554, at *1 (Fed. Cl. Feb. 1, 2017). The Claims Court explained that Sharifi could either attach as an exhibit the proof of ownership he allegedly provided Captain Reed or describe in some other way the specific location of the land that he (and not his neighbors) owned. *Id.* According to the Claims Court, that Afghanistan had its own customs

---

contesting Sharifi's account of these October 2010 conversations. The Claims Court declined to wade into this factual dispute and accepted Sharifi's allegations about the conversations as true. *Sharifi*, 143 Fed. Cl. at 809 n.4.

and practices regarding the formalities employed in recognizing property ownership "should not prevent [Sharifi] from providing more specific information concerning the location of his land." *Id.*

In his amended complaint, Sharifi alleged that government records, verified by the District Governor of Arghandab, showed that his grandfather owned the land on which the Army built COP Millet. J.A. 35, ¶ 5. Ownership of the land passed to Sharifi and his siblings, who subdivided the land by a 2004 inheritance agreement. J.A. 35, ¶ 6. Sharifi no longer alleged that the Army took his neighbor's land to construct COP Millet.

Sharifi attached three exhibits to his amended complaint. Exhibit A consists of the Afghan government records allegedly showing that Sharifi's grandfather owned the taken land. These records are letters sent to and received from Sharifi and his siblings, the District Governor of Arghandab, and the Governor of Kandahar. One letter from the District Governor of Arghandab to the Governor of Kandahar reads, "I have verified all the ownership documents and the land belongs to [Sharifi's grandfather]."[3] J.A. 46 (Sharifi's translation).

Exhibit B is the 2004 inheritance agreement that subdivided the land lot of Sharifi's grandfather among Sharifi and his siblings. And Exhibit C is a letter exchange with the District Governor of Arghandab, in which Sharifi requested verification that he owned the taken land, and the District Governor verified Sharifi's ownership. Exhibit C

---

[3]    The government also submitted a translation of this letter: "The land of the Late [Sharifi's grandfather] is confirmed." S.A. 89. We need not determine which translation is more accurate because we reach the same result under either translation.

also includes a drawing of the land Sharifi and his siblings allegedly own.

The government moved to dismiss Sharifi's amended complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the RCFC.[4] The government argued that, *inter alia*, Sharifi had not established a valid property interest in the allegedly taken land because Sharifi's government records were inadequate to support a claim of ownership under Afghan law. The government also attached six declarations to its motion to dismiss, including several witness declarations and an expert declaration on Afghan law.

The Claims Court agreed with the government, dismissing Sharifi's amended complaint for failure to show a cognizable property interest. *Sharifi*, 143 Fed. Cl. at 817. The court first determined which types of documents Afghan law recognized as proof of land ownership, mindful that it is "very difficult to determine . . . the legitimate owners of land and property in Afghanistan," in part because "for much of Afghanistan's recent history people have had no alternative but to use customary documents to validate land and property transfers as there has been no functioning official judicial system." *Id.* at 816 (internal quotations and citation omitted). The court then adopted the Law of Land Management Affairs, revised by the Taliban in 2000 and by the Afghan government in 2008, which recognized seven types of documents that may serve as proof of land ownership. *Id.* at 816–17. Because neither of

---

[4]    The government also moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the RCFC. The Claims Court only analyzed the government's Rule 12(b)(6) motion. *Sharifi*, 143 Fed. Cl. at 811–12, 817. On appeal, the government does not argue that the Claims Court lacked subject matter jurisdiction over Sharifi's claim. We see no basis for holding the Claims Court lacked subject matter jurisdiction either. *See* 28 U.S.C. § 1491(a).

the letters from the District Governor of Arghandab verifying ownership fit into any of these seven categories, the court held that Sharifi's letters did not constitute proof of land ownership under the laws of Afghanistan. *Id.* at 817.

The Claims Court acknowledged that "formal registration and titling has never been widespread" in Afghanistan. *Id.* (internal quotations and citation omitted). But the court concluded that, for the most part, Afghan law only recognizes land ownership based on formal documents. *Id.* That certain communities rarely follow Afghan property law and instead use informal customs to facilitate land transactions "puts [Sharifi] in an unfortunate bind, but not the sort of bind this Court is empowered to resolve by disregarding those laws entirely." *Id.* Because Sharifi had not shown that his grandfather owned the allegedly taken land, the court did not address whether the 2004 inheritance agreement validly transferred the property interest of Sharifi's grandfather to Sharifi. *See id.*

On July 11, 2019, the Claims Court entered judgment dismissing Sharifi's amended complaint. Sharifi timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A. Standard of Review

We review the grant of a motion to dismiss *de novo*. *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018). To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The tenet that a court must accept as true all allegations in a complaint is inapplicable to legal conclusions, however. *Id.*

B.  The Claims Court Did Not Convert the Government's Motion to Dismiss to a Motion for Summary Judgment

Before we reach the merits of Sharifi's appeal, we first address the government's contention that we should review the Claims Court's decision as a grant of summary judgment.  According to the government, the Claims Court's "consideration of matters outside the pleadings essentially transformed the motion to dismiss into a motion for summary judgment." Appellee's Br. 17.  The government relies on Rule 12(d) of the RCFC, which provides:

> If, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

According to the government, the exhibits that Sharifi attached to his amended complaint, as well as the declarations and exhibits attached to Sharifi's briefing of the Rule 12(b)(6) motion, constituted evidence that converted the government's motion to dismiss to a motion for summary judgment.

We disagree.  The exhibits that Sharifi attached to his amended complaint are not "matters outside the pleadings" that require the Claims Court to treat a Rule 12(b)(6) motion as a motion for summary judgment.  The Claims Court also did not rely on Sharifi's declarations and other exhibits attached to his briefing to dismiss his amended complaint for failure to state a claim.  *See Sharifi*, 143 Fed. Cl. at 816–17; *see also Easter v. United States*, 575 F.3d 1332, 1335 (Fed. Cir. 2009) ("Whether to accept extra-pleading matter on a motion for judgment on the pleadings and to treat the motion as one for summary judgment is within the *trial court's* discretion." (emphasis added)).

Indeed, the Claims Court consistently applied the correct standard to review a motion to dismiss—accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in favor of Sharifi. *See Sharifi*, 143 Fed. Cl. at 809 n.4 ("At this early stage, the Court may not wade into these factual disputes and accepts plaintiff's allegation that Commander Reed expressed some interest in leasing the land from its owner."); *id.* at 813 ("The plaintiff has alleged facts that, if proven, would show the United States was involved in the construction of COP Millet to a sufficient degree to find a Fifth Amendment taking."); *id.* at 814 ("[The government's] argument may carry the day at summary judgment but, at this stage, would require fact-finding that is inappropriate in evaluating a motion to dismiss."); *id.* at 816 (accepting "at this stage as true" the alleged fact that the District Governor of Arghandab verified that Sharifi's grandfather owned the land in question); *see also id.* at 817 (granting the government's motion to dismiss).

Nor did the court's determination of Afghan law governing land ownership convert the government's motion to dismiss into a motion for summary judgment. Rule 44.1 of the RCFC broadly permits the Claims Court to consider any relevant material to determine foreign law:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Rule 44.1 of the RCFC conforms to Rule 44.1 of the Federal Rules of Civil Procedure, which "provides flexible procedures for presenting and utilizing material on issues of

foreign law by which a sound result can be achieved with fairness to the parties." *See* Fed. R. Civ. P. 44.1 note (1966).

Under Rule 44.1, a court may "engage in its own research and consider any relevant material" it finds. *See id.* ("The court may have at its disposal better foreign law materials than counsel have presented, or may wish to reexamine and amplify material that has been presented by counsel in partisan fashion or in insufficient detail."). There is no requirement that a court give formal notice to the parties of its intention to engage in its own research on an issue of foreign law. *See id.* ("To require, however, that the court give formal notice from time to time as it proceeds with its study of the foreign law would add an element of undesirable rigidity to the procedure for determining issues of foreign law.").

Here, the Claims Court followed Rule 44.1 when it considered its own research and testimony from both parties about Afghan law and the prevalence of informal customs. Its reliance on these materials to determine a question of law did not convert the government's motion to a motion for summary judgment. Accordingly, we review the Claims Court's decision *de novo* as a grant of a motion to dismiss, not a motion for summary judgment.

C. The Claims Court Correctly Dismissed Sharifi's Amended Complaint for Failure to State a Claim

Turning to the merits, the Fifth Amendment provides that "private property" may not be "taken for public use, without just compensation." U.S. Const. amend. V. To claim a Fifth Amendment taking, a plaintiff must show a "cognizable property interest." *Alimanestianu v. United States*, 888 F.3d 1374, 1380 (Fed Cir. 2018). The Constitution does not create or define the scope of property interests compensable under the Fifth Amendment. *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003). "Instead, 'existing rules and understandings' and 'background principles' derived from an independent source, such as

state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Id.* (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992)).

First, the independent source of law relevant here is the law of Afghanistan. Neither party disputes the Claims Court's determination of the civil law governing land ownership in Afghanistan. Oral Arg. at 11:27–13:20, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=19-2382_11062020.mp3. Based on the government's expert declaration and the court's own research, at least as of 2008, seven types of documents may serve as proof of land ownership: (1) documents of a legal court; (2) a decree issued by the emirate and the prime ministry, if registered; (3) tax receipts; (4) proof of water rights; (5) customary deeds from before 1975, witnessed before 1978; (6) registered title documents; or (7) title documents obtained by court order. *Sharifi*, 143 Fed. Cl. at 816–17.

We agree with the Claims Court that the government records attached to Sharifi's amended complaint as Exhibit A do not constitute proof of land ownership under Afghan law. As the government's expert on Afghan law explained, "provincial and district governors are not authorized by the laws of Afghanistan to look into civil claims," like property law issues regarding ownership and inheritance, "or [to] issue instruction for that purpose." S.A. 75, ¶ 6(c), (f). In his opening brief, Sharifi does not identify the type of proof of ownership under which the government records fall. Without explanation, Sharifi characterizes these records as "sufficient" to establish Sharifi's vested interest in the allegedly taken land. Appellant's Br. 6. When asked at oral argument to identify which of the seven types of documents Sharifi pled he could provide, Sharifi also did not mention the government records. We therefore find Sharifi's factual allegations about these records insufficient to show he or his grandfather had a

cognizable property interest under Afghan law in the allegedly taken land.

We also agree with the Claims Court that we need not address the 2004 inheritance agreement because the amended complaint has not shown a cognizable property interest. The 2004 inheritance agreement is inadequate to show that Sharifi owned the allegedly taken land because there is no document recognized by Afghan law as proof of land ownership that shows the decedent—here, Sharifi's father—owned the land Sharifi inherited. Oral Arg. at 21:23–22:06.

Nevertheless, at oral argument, Sharifi asserted that the 2004 inheritance agreement constitutes proof of land ownership in the form of a registered title document because the agreement attached a diagram of the plot to the agreement and because Sharifi allegedly registered the agreement. Oral Arg. at 7:32–9:04. We are unpersuaded that Sharifi alleged sufficient factual allegations about the 2004 inheritance agreement to show that it is a proof of ownership recognized under Afghan law. Indeed, the agreement is "registered" only insofar as the District Governor of Arghandab verified the agreement at some point after Sharifi and his siblings executed the agreement. But under Afghan law, the District Governor is not authorized to certify inheritance agreements; only courts are. S.A. 76, ¶ 6(i).

Sharifi's reliance on *Yaist v. United States*, 656 F.2d 616 (Ct. Cl. 1981), is misplaced. In *Yaist*, the Court of Claims considered whether a plaintiff was entitled to just compensation for the taking of property to which the plaintiff allegedly held equitable title. *Id.* at 622–23. The *Yaist* court found equitable title under Florida law, applying the doctrine of equitable conversion. *Id.* *Yaist* is inapplicable here because Afghan law, not Florida law, defines the dimensions of the requisite property rights for purposes of establishing a cognizable taking. *See Maritrans*, 342 F.3d

at 1352. And Sharifi provides no support for determining that Afghan law recognizes a doctrine of equitable conversion.

Finally, Sharifi contends that we should recognize his property interest based on customary law in Afghanistan, *i.e.*, informal customs. Sharifi relies on a 2005 field study by the United States Agency for International Development ("USAID study"),[5] which discussed the use of customary law in Afghanistan. But as Sharifi admitted to the Claims Court, Kandahar Province and Arghandab District were not among the areas surveyed, and the study did not suggest an understanding that those areas followed customary law and traditions. S.A. 103 (8:4–14). Sharifi also conceded at oral argument that he had no reason to doubt that the civil law governing land ownership is currently applicable and has been applicable since 2008, two years before the alleged taking. *See* Oral Arg. at 12:01–13:20. On this record, we hold that customary law in Afghanistan cannot establish a cognizable property interest on which Sharifi can base his takings claim.

In sum, we find that the government records attached to Sharifi's amended complaint as Exhibit A and the 2004 inheritance agreement do not constitute proof of land ownership under the laws of Afghanistan. Even accepting as true all factual allegations in Sharifi's amended complaint, the amended complaint does not contain sufficient facts to state a plausible takings claim. *See Ashcroft*, 556 U.S. at 678.

---

[5]    *Afghanistan Rule of Law Project: Field Study of Informal and Customary Justice in Afghanistan and Recommendations on Improving Access to Justice and Relations Between Formal Courts and Informal Bodies*, U.S. Agency for Int'l Dev. (Apr. 30, 2005), https://pdf.usaid.gov/pdf_docs/Pnadf590.pdf.

### III. CONCLUSION

For these reasons,[6] the Claims Court's decision dismissing Sharifi's amended complaint is affirmed.

**AFFIRMED**

COSTS

No costs.

---

[6]  We do not reach the government's alternative arguments.  Because we agree with the Claims Court that Sharifi's amended complaint did not plead sufficient facts to show a cognizable property interest in the allegedly taken land, we vacate the remainder of the Claims Court's opinion.