# United States Court of Appeals for the Federal Circuit

---

**HARMONIA HOLDINGS GROUP, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, ALETHIX, LLC,**
*Defendants-Appellees*

---

2020-1703

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-01421-MBH, Senior Judge Marian Blank Horn.

---

Decided: June 8, 2021

---

WALTER BRAD ENGLISH, Maynard, Cooper & Gale, PC, Huntsville, AL, argued for plaintiff-appellant. Also represented by EMILY J. CHANCEY, JON DAVIDSON LEVIN, MICHAEL W. RICH.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

JONATHAN MICHAEL BAKER, Crowell & Moring LLP,

Washington, DC, for defendant-appellee Alethix, LLC. Also represented by ERIC RANSOM, ZACHARY H. SCHROEDER.

———————————

Before LOURIE, MAYER, and O'MALLEY, *Circuit Judges*.

MAYER, *Circuit Judge*.

Harmonia Holdings Group, LLC ("Harmonia") appeals the final judgment of the United States Court of Federal Claims dismissing in part and denying in part its post-award protest. *See Harmonia Holdings Grp., LLC v. United States*, 147 Fed. Cl. 756 (2020) ("*Federal Claims Decision*"). For the reasons discussed below, we affirm.

## I. BACKGROUND

The United States Census Bureau ("Bureau" or "agency") issued a request for quotations ("RFQ") seeking statistical analysis system and database programming support services. *See* J.A. 10536. The RFQ stated that the Bureau intended to issue a time and materials task order which would be set aside for woman-owned small businesses, J.A. 10531, and that contract award would be made on a best-value basis, considering price as well as four non-price factors. J.A. 10598, 10601; *see also* J.A. 10591–96.

The Bureau's technical evaluation team assigned Harmonia's proposal nine strengths, no weaknesses, and two risks[1] under factor one, the technical factor. J.A. 11163–64. It assigned Harmonia strengths for its proposals to cross-train its development staff and to introduce an extract, transform, and load ("ETL") automation tool. J.A. 11163. The agency considered these elements strengths

———————————

[1] The Bureau defined a "risk" as "[a] flaw in the proposal that increases the risk of unsuccessful contract performance." J.A. 10907.

because they could provide efficiencies. J.A. 11163. According to agency evaluators, however, while these aspects of Harmonia's proposal were considered strengths, they also presented certain risks. J.A. 11164. Specifically, the evaluators expressed concern that Harmonia's proposed cross-training and use of an ETL automation tool could result in delays in contract performance. J.A. 11164.

On September 5, 2019, the contracting officer issued an award decision memorandum, explaining that he found no meaningful differences in the proposals submitted by Harmonia and Alethix, LLC ("Alethix") with respect to factors two, three, and four, and that the tradeoff analysis was therefore "rooted in the differences in strengths, weaknesses, and risks for" factor one, the technical factor. J.A. 11214. The contracting officer further stated that Alethix's proposal "demonstrated significant strengths presenting numerous benefits to the Government" and that Alethix presented "strengths that go beyond the approaches and present greater benefits to the [Bureau] than the technical strengths submitted by [Harmonia and another offeror]." J.A. 11214–15. On September 6, 2019, the Bureau awarded the contract to Alethix. J.A. 11315–16.

Harmonia then filed a protest at the Court of Federal Claims. Its amended complaint included three counts. *See* J.A. 66–81. Count I challenged the Bureau's technical evaluation of proposals, J.A. 77–78, Count II alleged that the contracting officer violated 48 C.F.R. § 19.301-1(b) (2019) ("FAR 19.301-1(b)")[2] by failing to refer Alethix to the Small Business Administration ("SBA") for a size

---

[2]    Although FAR 19.301-1(b) was subject to recodification in March 2020, we cite to the version of the regulation that was in effect during the procurement and the proceedings before the Court of Federal Claims.

determination, J.A. 78–79, and Count III challenged the agency's best-value determination, J.A. 79–80.

The Court of Federal Claims granted the government's motion for judgment on the administrative record with respect to Counts I and III, concluding that Harmonia had failed to demonstrate that the Bureau acted arbitrarily, capriciously, or in contravention of the terms of the solicitation in evaluating proposals or in making its best-value determination. *See Federal Claims Decision*, 147 Fed. Cl. at 784–89. Although Harmonia argued that the Bureau erred in assigning it risks for its proposed cross-training of development staff and peer-testing of software code, the court determined that the agency had rationally concluded that despite the potential benefits of cross-training and peer-testing, there was a risk that contract performance could be delayed as a result of the implementation of such practices. *Id*. at 784–86. The court rejected, moreover, Harmonia's assertion that the Bureau's "evaluation errors infected the source selection decision, rendering it irrational and contrary to the [s]olicitation's terms." *Id*. at 788 (internal quotation marks omitted).

The court dismissed Count II of Harmonia's amended complaint because it concluded that Harmonia had failed to exhaust its administrative remedies. *Id*. at 775–77. In the court's view, it was without authority to consider Harmonia's claim that the contracting officer violated FAR 19.301-1(b) by failing to refer Alethix to the SBA because Harmonia had not availed itself of the SBA's procedures for bringing a size protest. *See Federal Claims Decision*, 147 Fed. Cl. at 778.

Harmonia then filed a timely appeal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A. Standard of Review

"We review the grant of a motion for judgment on the administrative record in a bid protest action de novo." *Off. Design Grp. v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020); *see XOtech, LLC v. United States*, 950 F.3d 1376, 1379 (Fed. Cir. 2020). We likewise conduct a de novo review of the grant of a motion to dismiss. *See Sharifi v. United State*s, 987 F.3d 1063, 1066 (Fed. Cir. 2021); *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018). "In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)).

### B. The Regulatory Framework

Congress enacted the Small Business Act of 1953, 15 U.S.C. §§ 631–651, in an effort to "aid, counsel, assist, and protect . . . the interests of small-business concerns in order to preserve free competitive enterprise [and] to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises." *Id.* § 631(a); *see Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1256 (Fed. Cir. 2005). To further this objective, certain government procurements, such as the one at issue here, are set aside for small business concerns. *See* 15 U.S.C. § 644(a); *Kingdomware Techs., Inc. v. United States*, – U.S. –, 136 S. Ct. 1969, 1973 (2016) ("In an effort to encourage small businesses, Congress has mandated that federal agencies restrict competition for some federal contracts.").

The SBA is vested with authority to establish "detailed definitions or standards by which a business concern may

be determined to be a small business concern" for purposes of federal law. 15 U.S.C. § 632(a)(2)(A). The "SBA uses the North American Industry Classification System ('NAICS') to determine which entities qualify as small business concerns" and "specifies the maximum number of employees or maximum annual receipts which a company may have in order to qualify as a small business within a particular NAICS code." *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1247 (Fed. Cir. 2015); *see* 13 C.F.R. § 121.201.

An entity may, in certain circumstances, lose its status as a small business concern when it is affiliated with a large business. *See* 13 C.F.R. § 121.103; *see also Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1361 (Fed. Cir. 2015) ("In determining affiliation, [the] SBA considers factors such as ownership, common management, previous relationships with or ties to another concern, contractual relationships, and joint ventures between entities."). Of relevance here, a contractor and its "ostensible subcontractor" will be treated as part of a joint venture, and therefore affiliates, for size determination purposes. 13 C.F.R. § 121.103(h)(2). Pursuant to SBA regulations, an "ostensible subcontractor" is defined as "a subcontractor that is not a similarly situated entity . . . and performs primary and vital requirements of a contract, or of an order, or is a subcontractor upon which the prime contractor is unusually reliant." *Id.*

## C. The Distinction Between a Size Protest and a Bid Protest

The Court of Federal Claims dismissed Count II of Harmonia's amended complaint because it concluded that Harmonia had failed to exhaust its administrative remedies. *See Federal Claims Decision*, 147 Fed. Cl. at 775–77. In the court's view, Count II stated a size protest and yet Harmonia had not filed a claim with the contracting officer seeking a size status determination from the SBA. *See id.*

We agree that a disappointed bidder must generally exhaust its administrative remedies at the SBA before seeking judicial review of a size protest. *See* 13 C.F.R. § 121.1101(a) (explaining that an offeror may appeal a formal size determination made by an SBA Government Contracting Area Office to the SBA's Office of Hearings and Appeals ("OHA") and that "[t]he OHA appeal is an administrative remedy that must be exhausted before judicial review of a formal size determination may be sought in a court"); *see also Palladian Partners*, 783 F.3d at 1261 (concluding that an offeror's "failure to participate in [a] pending OHA appeal was a failure to exhaust its administrative remedies"). We conclude, however, that the Court of Federal Claims misapprehended the nature of the allegations recited in Count II and blurred the distinction between a size protest and a bid protest.

A "size protest" refers to an administrative challenge to an offeror's size which is filed with the SBA. *See* 13 C.F.R. § 121.1003 (explaining that an offeror may submit a size protest to the contracting officer who is required to forward it to the SBA for resolution); *see also id*. § 121.1002 (stating that "with the exception of size determinations for purposes of the Disaster Loan Program" the SBA "makes all formal size determinations"); *White Hawk Grp., Inc. v. United States*, 91 Fed. Cl. 669, 673 (2010) (explaining that "[a] size protest is a purely administrative claim before the SBA in which a small business concern competing for [a small business] set aside objects to the size determination of another offeror"). A "bid protest," by contrast, generally challenges actions that an agency takes, or fails to take, in connection with a procurement or proposed procurement. *See* 28 U.S.C. § 1491(b)(1) (providing the Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with

a procurement or a proposed procurement"); *see also Off. Design Grp.*, 951 F.3d at 1371 (explaining that "[i]n a bid protest case" a court must "determine whether (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure" (citation and internal quotation marks omitted)); *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380–81 (Fed. Cir. 2012) (explaining that the Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process" and that "the statute grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement").

Count II of Harmonia's complaint did not assert a size protest because it did not ask the Court of Federal Claims to make any determination regarding whether Alethix qualified as a small business concern for purposes of the procurement at issue here. *See* J.A. 78–79; *see also White Hawk*, 91 Fed. Cl. at 673 ("Despite the similar label, 'size protests' bear no relation to bid protests. It is exclusively the function of the SBA to decide [size protests], subject to an administrative appeal process within the agency."). To the contrary, Harmonia acknowledges that the court is without jurisdiction either to adjudicate a size protest in the first instance or to review an SBA size determination in the absence of an appeal to the OHA. *See* Brief of Appellant 14–15. Instead, Count II of Harmonia's complaint invoked the court's broad bid protest jurisdiction by alleging that the Bureau's contracting officer acted in contravention of FAR 19.301-1(b) by failing to refer Alethix to the SBA. Simply put, because Count II did not present a direct challenge to Alethix's size, but instead asked the court to resolve whether the contracting officer had acted in conformity with applicable regulatory requirements, it stated

a bid protest rather than a size protest. Accordingly, the Court of Federal Claims erred in dismissing Count II for failure to exhaust the SBA adjudicatory procedures required for size protests.

That the court erroneously dismissed Count II based on a perceived failure to exhaust administrative remedies is not, however, "fatal to [its] judgment of dismissal." *Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007). Because, as will be discussed more fully below, Count II fails to state a claim upon which relief can be granted, we affirm the court's judgment of dismissal on that basis. *See, e.g.*, *Taylor v. United States*, 959 F.3d 1081, 1087–91 (Fed. Cir. 2020) (affirming a judgment of dismissal but concluding that the dismissal should have been for failure to state a claim rather than for lack of subject matter jurisdiction); *Adair*, 497 F.3d at 1258 (same); *Brodowy v. United States*, 482 F.3d 1370, 1376 (Fed. Cir. 2007) (same); *see also Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006) (stating that although the Court of Federal Claims erred in dismissing a "claim for lack of jurisdiction, the error was harmless because the claim should have been dismissed on the merits").

### D. The Alleged Regulatory Violation

FAR 19.301-1(b) states:

The contracting officer shall accept an offeror's representation in a specific bid or proposal that it is a small business unless (1) another offeror or interested party challenges the concern's small business representation or (2) the contracting officer has a reason to question the representation. Challenges of and questions concerning a specific representation shall be referred to the SBA in accordance with [48 C.F.R. §] 19.302.

Harmonia asserts that Alethix's proposal should have caused the contracting officer to question whether it was

unduly reliant on its other-than-small subcontractor[3] and that the contracting officer therefore violated FAR 19.301-1(b) by failing to refer Alethix to the SBA for a size determination. According to Harmonia, moreover, its allegation of a regulatory violation in connection with a procurement provided the Court of Federal Claims with jurisdiction over Count II of its complaint. *See* 28 U.S.C. § 1491(b)(1); *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008) (explaining that "[a] non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction" in the Court of Federal Claims).

Harmonia further contends that it had no viable opportunity to file its own size protest at the SBA challenging Alethix's size status. The Bureau's task order was issued under the Federal Supply Schedule ("FSS") program, *see* J.A. 10531, a program that provides certain federal agencies with the ability to issue orders for products and services under pre-existing long-term contracts between commercial vendors and the General Services Administration, *see* 48 C.F.R. § 8.402(a). Because the procurement was an FSS acquisition, and the contracting officer did not request a size recertification, the time period for filing an SBA protest challenging Alethix's size status expired in July 2015, six days after Alethix was awarded its FSS contract. *See* 13 C.F.R. § 121.1004(a)(3)(i); *see also id.* § 121.404(a)(1). According to Harmonia, it had no reason to file a size protest in 2015, and filing a protest in 2019, after it first became aware of Alethix's alleged ostensible subcontractor relationship, would have been futile since the SBA would have immediately dismissed the protest as untimely.

---

[3]    Alethix's subcontractor was the prime contractor on a related procurement. *See* J.A. 10085. The identity of this subcontractor has been designated confidential.

The government disagrees. It contends that Harmonia forfeited the right to obtain a determination regarding whether Alethix qualifies as a small business concern for purposes of this procurement because it slept on its rights. In this regard, while the government acknowledges that any size protest filed by Harmonia would have been deemed untimely under SBA regulations, it asserts that Harmonia's "filing [of] an (albeit untimely) size protest with the contracting officer would not have been futile because it could have caused either the contracting officer or the SBA to review Alethix's size, which is the remedy that Harmonia sought in the trial court." Brief of the United States 9.

The government further asserts that a contracting officer is entitled to rely upon an offeror's small business representation and that permitting a disappointed bidder to assert, in a post-award bid protest before the Court of Federal Claims, that the contracting officer should have recognized an ostensible subcontractor relationship and made a referral to the SBA would result in "unnecessary [and] substantial delays in the procurement process." Brief of the United States 20. It contends, moreover, that while an offeror may, under certain circumstances, bring its own size protest contesting the size status of a competing offeror, FAR 19.301-1(b) does not "permit[] an offeror—who itself did not challenge the size representation [of the awardee]— to challenge the contracting officer's failure to refer [the] awardee to the SBA." Brief of the United States 22; *see Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000) ("In order for a private contractor to bring suit against the Government for violation of a regulation, that regulation must exist for the benefit of the private contractor. If, however, the regulation exists for the benefit of the Government, then the private contractor does not have a cause of action against the Government in the event that a contracting officer fails to comply with the regulation." (citations omitted)); *see also Galen Med. Assocs., Inc. v.*

*United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) ("Not every regulation is established for the benefit of bidders as a class, and still fewer may create enforceable rights for the awardee's competitors." (citation and internal quotation marks omitted)).

In order to resolve the dispute presented here, we need not, and therefore do not, decide whether FAR 19.301-1(b) affords an offeror, such as Harmonia, that did not file its own size protest, the right to challenge the failure of a contracting officer to refer a competing offeror to the SBA for a size status determination. Even assuming *arguendo* that Harmonia has the right to mount such a challenge, Count II of its complaint fails to state a claim upon which relief can be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)); *see also* U.S. Ct. Fed. Claims R. 12(b)(6). Even accepting all of Harmonia's well-pled factual allegations as true and drawing all reasonable inferences in its favor, *see Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Sharifi*, 987 F.3d at 1067, its complaint does not contain sufficient facts to state a plausible claim that the contracting officer violated FAR 19.301-1(b) or otherwise abused his discretion by failing to refer Alethix to the SBA for a size status determination.

As a preliminary matter, Harmonia points to nothing in the language of FAR 19.301-1(b) suggesting that a contracting officer, as a general matter, has any affirmative obligation to conduct an independent investigation into an offeror's small business representation. *See Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 531 (2012) (concluding that there was nothing in the awardee's proposal that "should have triggered an inquiry" into the awardee's size status and that the contracting officer was not required to look beyond the proposal by consulting a "Central Contractor Registration" system to determine

whether the awardee met applicable size requirements). To the contrary, as we have previously recognized, a contracting officer is generally entitled to rely on a contractor's certifications. *See Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1315 (Fed. Cir. 2016) (concluding that an agency was entitled to rely on an awardee's certification of compliance with a solicitation's technical requirements where there was nothing in the awardee's proposal that "should have necessarily led the [agency] to the conclusion that" the awardee "could not and would not comply" with solicitation requirements (citation and internal quotation marks omitted)); *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011) (explaining that "[w]here an offeror has certified that it meets the technical requirements of a proposal, the Contracting Officer is entitled to rely on such certification in determining whether to accept a bid"). An exception to this rule is when "a proposal, *on its face*, should lead an agency to the conclusion that an offeror could not and would not comply with the [applicable solicitation requirement]." *Allied*, 649 F.3d at 1330 (citation and internal quotation marks omitted); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1039 (Fed. Cir. 2009) ("[A] proposal that, on its face, leads an agency to the conclusion that an offeror could not and would not comply with" a solicitation requirement "is technically unacceptable and may not form the basis for an award." (citation and internal quotation marks omitted)).

Second, and relatedly, because the question of whether an ostensible subcontractor relationship exists can only be resolved after a detailed assessment of numerous factors related to whether a prime contractor is unusually reliant on its subcontractor, the existence of such a relationship can rarely be gleaned simply by examining the face of an offeror's proposal. *See* 13 C.F.R. § 121.103(h)(2) (explaining that in determining whether an ostensible subcontractor relationship exists "[a]ll aspects of the relationship between the prime and subcontractor are considered,

including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation"). Indeed, the United States Government Accountability Office has recognized that "the question of a prime contractor's unusual reliance on a subcontractor is . . . an intensely fact-specific inquiry that can be affected by a wide variety of factors" and that it is therefore "not apparent, given the complexity of the analysis, under what circumstances such unusual reliance would be clear on the face of a proposal." *Kodiak Base Operations Servs., LLC*, B-414966, 2017 WL 4863848, at *4 n.3 (Comp. Gen. Oct. 20, 2017); *see also Ingenesis, Inc.*, SBA No. SIZ-5436, 2013 WL 393479, at *13 (Jan. 28, 2013) ("Ostensible subcontractor inquiries are intensely fact-specific given that they are based upon the specific solicitation and specific proposal at issue." (citation and internal quotation marks omitted)).

Third, even assuming, for the sake of argument, that Harmonia could show that Alethix's proposal, on its face, contained some suggestion of an ostensible subcontractor relationship, this would not suffice to establish reversible error in the contracting officer's failure to refer Alethix to the SBA for a size status determination. It is well-settled that "[c]ontracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (citation and internal quotation marks omitted); *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). In order to bring a successful claim, a disappointed bidder must demonstrate that a contracting officer's procurement decision or action lacked a rational basis or

constituted a "clear and prejudicial violation of applicable statutes or regulations." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (citation and internal quotation marks omitted); *see also Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (emphasizing that procurement decisions made by contracting officers are subject to "highly deferential rational basis review" (citation and internal quotation marks omitted)). Accordingly, in order to stake out a claim for relief, Harmonia's burden was not simply to show that Alethix's proposal contained some suggestion of an ostensible subcontractor relationship, but instead that the indicia of such a relationship were so compelling that the contracting officer necessarily abused his discretion by failing to refer Alethix to the SBA for a size status determination.

The factual allegations in Harmonia's complaint are insufficient to state a plausible claim under this standard. Although Alethix's proposal indicated that it planned to hire several employees from its subcontractor, this does not mean that Alethix was the prime contractor in name only or that it was unusually reliant on its subcontractor. *See, e.g., Inquiries, Inc.*, SBA No. SIZ-6008, 2019 WL 2710713, at *23 (June 3, 2019) (explaining that the ostensible subcontractor rule will not be violated "even when key personnel will be hired from [the subcontractor], so long as the individual[s] will become the prime contractor's employee[s] and will remain under the supervision and control of the prime contractor"); *Elevator Serv., Inc.*, SBA No. SIZ-5949, 2018 WL 4050767, at *9 (Aug. 10, 2018) (stating that "it is not problematic for a prime contractor to hire from its subcontractor, provided that personnel are reviewed individually rather than unilaterally transferred or hired *en masse*"); *Ingenesis*, 2013 WL 393479, at *15 (concluding that the ostensible subcontractor rule was not violated where the prime contractor planned to hire

16                    HARMONIA HOLDINGS GROUP, LLC v. US

employees from both its subcontractor and "from alternate sources").

Furthermore, given that Alethix's proposal indicated that its own employee, not an employee of its subcontractor, would act as the project manager, *see* J.A. 10773, 10792, 10819, Harmonia's assertion that Alethix intended for its subcontractor to manage the project is no more than speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Harmonia likewise fails to provide a factual predicate for its claim that Alethix's proposal gave the contracting officer reason to question its size representation because Alethix lacked relevant experience and would necessarily need to rely on its more experienced subcontractor to win the contract. In its technical proposal, Alethix indicated that it had its own relevant experience, *see* J.A. 10826, 10833, and agency evaluators specifically determined that Alethix's own past performance on similar projects was a strength of its proposal, *see* J.A. 11157–58. Accordingly, because Harmonia does not allege facts sufficient to support a plausible claim that the contracting officer abused his discretion in failing to refer Alethix to the SBA for a size determination, Count II fails as a matter of law. *See Ashcroft*, 556 U.S. at 678–79; *Sharifi*, 987 F.3d at 1070; *see also Taylor*, 959 F.3d at 1090 (dismissing a claim because, based on the allegations contained in the plaintiffs' complaint, the claim could not "succeed as a matter of law").

## E. The Evaluation of Proposals

Finally, we conclude that the Court of Federal Claims correctly rejected Harmonia's challenge to the agency's evaluation of the offerors' proposals. *See Federal Claims Decision*, 147 Fed. Cl. at 784–89. Harmonia asserts that the Bureau erred in assigning risks for its proposal to cross-train its staff and peer-test certain software code. *See* J.A. 11164. In Harmonia's view, nothing in its "proposal to

cross-train its development staff and peer-test code gave rise to [a] risk of delay," and "[i]t was irrational for the [Bureau] to conclude otherwise." Brief of Appellant 32. Harmonia further asserts that the agency erred in assigning a risk for its proposed use of an ETL automation tool, stating that it proposed to use an ETL tool generally, but did not bind itself to a specific tool.

Our role in reviewing procurement decisions, however, is not to evaluate the offerors' proposals anew or to substitute our judgment for that of the agency. *See, e.g.*, *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (explaining that "technical ratings . . . in [a] procurement . . . involve discretionary determinations of procurement officials that a court will not second guess"). Harmonia fails to establish that the Bureau acted arbitrarily, capriciously, or contrary to the terms of the solicitation when it determined that while Harmonia's proposed cross-training of staff and peer-testing of code had certain potential advantages, they also had potential disadvantages. *See* J.A. 11163–64. In this regard, the Bureau reasonably determined that both cross-training and peer-testing "could cause delays in delivery of software." J.A. 11164.

Under the circumstances presented here, moreover, we conclude that the Bureau had a reasonable basis for determining that a single element of an offeror's proposal—such as cross-training or peer-testing—could constitute both a strength and a potential risk. *See Federal Claims Decision*, 147 Fed. Cl. at 785 (explaining that "it appears reasonable . . . that the same proposal could have benefits, but also pose some risk, as the [Bureau] appeared to see the benefit if cross-training would eliminate single points of failure/dependencies on individuals and make the overall team . . . more efficient in responding to inquiries and issues, but also the risk if it could cause delays in delivery of software" (internal quotation marks omitted)). Furthermore, while Harmonia alleges that the Bureau misinterpreted its proposal to require peer-testing of third-party code, rather

than Harmonia's own code, and mistakenly assumed that Harmonia would use the specific ETL automation tool named in its proposal, it points to no persuasive evidence showing that it was competitively prejudiced by these alleged errors. *See, e.g.*, *Glenn*, 720 F.3d at 908 ("Ultimately, to prevail in a bid protest, the protestor must show prejudicial error."). As the Court of Federal Claims correctly recognized, the Bureau was consistent in its approach to the offerors' proposals, *see Federal Claims Decision*, 147 Fed. Cl. at 785, and Alethix also received both a strength and a risk for its proposed use of cross-training and peer-testing, *see* J.A. 11156–57.

Harmonia likewise fails to show that the Bureau erred in concluding that Alethix's proposal represented the best value for the agency. *See* J.A. 11211–16; *see also Galen*, 369 F.3d at 1330 (explaining that when a contract is "to be awarded based on 'best value,' the contracting officer ha[s] even greater discretion than if the contract [is to be] awarded on the basis of cost alone"). In this regard, the solicitation specifically stated that the agency was "more concerned with obtaining superior technical and management capabilities than with making an award at the lowest overall cost." J.A. 10076; *see also* J.A. 10073. There is no dispute that the total estimated price reflected in Harmonia's proposal was somewhat lower than that reflected in Alethix's proposal. J.A. 11213. Harmonia fails to identify any reversible error, however, in the Bureau's conclusion that Alethix's proposal represented the best value because it "proposed numerous innovations to improve efficiencies and successfully meet [solicitation] requirements" and the other offerors were "unable to match these significant strengths and correlating benefits to the [agency]." J.A. 11215. We have considered the parties' remaining arguments but do not find them persuasive.

### III. CONCLUSION

Accordingly, the judgment of the United States Court of Federal Claims is affirmed.

**AFFIRMED**

### COSTS

No costs.